BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT NO. 1 OF THE TOWNS OF WALTON, HAMDEN, TOMPKINS, FRANKLIN AND SIDNEY, DELAWARE COUNTY, Plaintiff, *v.* EUGENIA T. MILES et al., Defendants.

Third Department, March 14, 1963.

88

*Paul F. Eaton* (*Hinman, Howard & Kattell* of counsel; *Keith E. Osber* on the argument), for plaintiff.

*Leonard E. Friedlander* and *Walter L. Terry* for defendants.

BERGAN, P. J. The problem presented by this submitted controversy (Civ. Prac. Act, §§ 546–548) is whether section 345 of the Real Property Law is constitutional in retroactive application. This section is one of several statutory amendments enacted in 1958 on recommendation of the Law Revision Commission dealing with certain future and contingent interests in real property (L. 1958, ch. 865).

Our problem is confined entirely to section 345, which provides for the extinguishment of a condition subsequent or special limitation restricting the use of land and the resulting right of entry and the possibility of reverter unless a declaration of an intention to preserve it be recorded by the party possessed of the future interest.

A reasonable period was allowed to those interested in preserving existing rights to record the required declaration. Section 345 requires that the declaration in respect of a condition subsequent or special limitation created before September 1, 1931 be recorded by September 1, 1961. This is a period of three years after the effective date of the statute.

The controversy before us arises on these stipulated facts: A century ago, December 28, 1863, John Townsend and Sarah, his wife, conveyed the property in dispute in the Town of Walton, Delaware County, to the trustees of Walton Academy. The deed contained this clause: " Provided nevertheless that the said lot and the building thereon shall be used for the purposes of an Academy and no other then this deed shall remain in full force

and effect otherwise it shall become void and the premises herein conveyed shall revert to the said John Townsend party of the first part and to his heirs."

The land thus conveyed passed from the trustees of Walton Academy to the trustees of Union Free School District of Walton and ultimately in 1949 to the plaintiff Board of Education of Central School District No. 1, as statutory successor to the trustees of the Union Free District.

Through all this period the property was used for school purposes; but on April 1, 1962 plaintiff discontinued such use. On April 13, 1962 defendants as the sole heirs at law of John Townsend recorded in the Delaware County Clerk's office a declaration of intention to preserve restrictions on the use of land.

If section 345 of the Real Property Law is a valid exercise of legislative power, their rights are extinguished, since the filing of the declaration was over six months after the expiration of the time for recording such an intention fixed by statute; but if the statute is invalid in its retroactive provisions the rights of defendants have not been extinguished. Defendants argue both that the statute deprives them of due process and that it impairs the obligation of a contract and a property right.

The language of the 1863 deed created either a fee simple subject to a condition subsequent, as the use of the words "provided that" indicate; or a fee simple determinable called also a fee on special limitation, as the use of the words "shall revert to" indicate. These fees have been the subject of judicial difficulty in the courts of New York, e.g., *Fausett* v. *Guisewhite* (16 A D 2d 82) and elsewhere, *Trustees of Schools* v. *Batdorf* (6 Ill. 2d 486 [1955]).

It is not altogether clear that future interests of this kind are regarded in New York as property entitled to constitutional protection. They have been characterized as bare possibilities. (*Nicoll* v. *New York and Erie R. R. Co.*, 12 N. Y. 121, 132; *Upington* v. *Corrigan*, 151 N. Y. 143, 151; *First Reformed Dutch Chruch* v. *Croswell*, 210 App. Div. 294, appeal dismissed 239 N. Y. 625.) While the last-cited case indicates there has been some doubt as to the transferability of these rights, it was held squarely in *Nichols* v. *Haehn* (8 A D 2d 405) that a possibility of reverter is alienable, and the Legislature has more recently settled the question of their descent and transfer by an amendment to section 59 of the Real Property Law (L. 1962, ch. 146, eff. Sept. 1, 1962).

The alienability of these future or contingent interests is not necessarily conclusive upon the question of a right to their constitutional protection. It is interesting, however, to note

that Illinois, which does not regard a possibility of reverter as transferable (*Pure Oil Co.* v. *Miller-McFarland Drilling Co.,* 376 Ill. 486 [1941]) also does not regard it as a right entitled to constitutional protection (*Trustees of Schools* v. *Batdorf, supra*).

The constitutional issue must be tested out on the rationality of need for public regulation of these future and contingent interests in the general welfare. No doubt the man possessed of a possibility of reverter in his favor has something tangible in legal theory and perhaps also something of market value. That he can transfer this as a matter of legal right to somebody else does not change the basic nature of the legal thing he has; or the legal thing his transferee gets.

The right to regulate and to extinguish under certain reasonable conditions depends in the end upon the nature of the thing regulated and extinguished. We have concluded that the recording requirement of section 345 is a valid exercise of legislative power and that the failure to record extinguished defendant's contingent interest in the subject land.

That defendants' rights did not mature until the condition occurred, i.e., use for school purposes was discontinued on April 1, 1962, is not controlling. The right was created before September 1, 1931 and the recording was required to have been made by September 1, 1961 (§ 345, subd. 4).

The Law Revision Commission and the draftsmen of the 1958 statute seem to have entertained some slight misgivings on the constitutionality of the recording requirements of section 345 in retroactive application. (N. Y. Legis. Doc., 1951, No. 65 [P], pp. 27–36; N. Y. Legis. Doc., 1958, No. 65 [B], pp. 102–107.)

These doubts stemmed in large part from a decision of the Court for the Correction of Errors in 1839 (*Varick's Executors* v. *Briggs,* 22 Wend. 543) which held unconstitutional the recording act of 1813 in its adverse effect on a deed executed in 1802.

The opinion of the court by Senator VERPLANCK was based upon a supposed conflict with the provision of the United States Constitution protecting contracts from impairment. The Senator noted (p. 546): "I must place my conclusion as to the effect of these recording statutes distinctly and expressly upon the clause of the constitution of the United States prohibiting any state from passing any law impairing the obligation of contracts. * * * Now the effect of a subsequent statute enacting that such valid contracts shall be adjudged fraudulent and void as against certain persons unless a further legal sanction [recording] be added, must be in direct hostility to the very words of the constitutional inhibition. The contracts themselves are impaired by being adjudged void."

No notice seems to have been taken in the Court of Errors of the decision of the Supreme Court of the United States nine years earlier (1830) in *Jackson ex dem. Hart* v. *Lamphire* (3 Pet. [28 U. S.] 280), which upheld the validity of a New York statute providing for the resolution of conflicting claims to land by Commissioners and which became binding and conclusive unless the unsuccessful claimant noted his dissent within a specified time. The effect of the court's decision was to cut off the earlier of two conflicting titles because of the failure of the elder grantee to dissent.

Mr. Justice BALDWIN noted (p. 290) that it was within the undoubted power of the New York Legislature '' to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same, whether the deed is dated before or after the passage of the recording act.''

This, he added (p. 290), '' is not a law impairing the obligation of contracts; such, too, is the power to pass acts of limitations, and their effect.'' Although the court was there dealing with the latter type of legislative control, the opinion concluded (p. 290) that '' Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned ''.

In 1871 the Supreme Court in *Curtis* v. *Whitney* (13 Wall. [80 U. S.] 68) had before it the retroactive validity of a statute in Wisconsin providing that where land had been sold for taxes and was occupied, the deed should not be issued unless notice had been given to the occupant. The court held the retroactive operation of the statute did not impair a contract within the constitutional meaning.

Mr. Justice MILLER noted (pp. 70–71): '' Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by State and National legislation. For such legislation demanded by the public good however it may retroact on contracts previously made, and enhance the cost and difficulty of performance, or diminish the value of such performance to the other party, there is no restraint in the Federal Constitution, so long as the obligation of performance remains in full force.'' The decision in *Jackson* v. *Lamphire* (*supra*) was expressly followed (p. 71).

Eleven years later the court in *Vance* v. *Vance* (108 U. S. 514) upheld the retroactive effect of a recording requirement of a Louisiana statute which gave sufficient time and opportunity for

compliance, Mr. Justice MILLER again writing for the court, and relying both on *Curtis* v. *Whitney* (p. 518) and on *Jackson* v. *Lamphire* (p. 520). These express interpretations of the United States Constitution by the Supreme Court would seem binding on us against the decision of the Court of Errors in *Varick's Executors*. (*Central Sav. Bank* v. *City of New York*, 280 N. Y. 9, cert. denied 306 U. S. 661.)

And although there has been a measure of deference to *Varick's Executors* in some New York cases (e.g., *Felix* v. *Devlin*, 90 App. Div. 103; *Fawcett* v. *Andrews*, 203 App. Div. 591) its stature as modern precedent must be regarded as impaired by the circumstances of the dissent by DWIGHT and GRAY, Commissioners of Appeals, in *Fitzpatrick* v. *Boylan* (57 N. Y. 433). The issue was whether a statute affecting a mechanic's lien was intended to be retroactive.

The majority held it was prospective; the minority disagreed, but was of opinion (per DWIGHT, C.) that the retroactive effect was valid because of the reasonable facilities available for the lienor's protection. What is significant for our purposes is a discussion in the dissent of the effect on *Varick's Executors* of two of the Supreme Court decisions we have discussed, *Jackson* and *Curtis*. The decision in *Varick's Executors* " must be regarded as overborne " by the Supreme Court decisions (p. 443). This evaluation of the law in the dissenting opinion, not disputed by the majority who acted on another premise, is entitled to marked respect both on its basic logic and upon the eminence of the two judicial Commissioners who subscribed to it. This view is strengthened somewhat by the powerful statement of VANN, J., in *People* v. *Luhrs* (195 N. Y. 377, 384): " The Statute of Frauds, the Recording Act, the laws relating to usury, chattel mortgages, conditional sales and many others designed to prevent fraud, interfere with freedom of contract, which is one form of liberty, or with the enjoyment of property, which is under the protection of both Constitutions to the same extent as the property itself, yet it would be regarded as bold and reckless to challenge those statutes as unconstitutional."

The decisions in *Leonard* v. *Harris* (147 App. Div. 458, affd. 211 N. Y. 511) and *Vincinguerra* v. *Fagan* (57 Misc. 224) tend to support the conclusion that the recording provisions of section 345 of the Real Property Law are constitutionally valid.

The over-all summary of New York law on this question in the 1951 Report of the Law Revision Commission seems apposite. The commission noted (N. Y. Legis. Doc., 1951, No. 65 [P], p. 31) that " the doctrine of the *Varick* case is opposed by the great weight of authority; has been ignored by the lower New

York courts on several occasions; has never been followed by the Court of Appeals; and has been expressly questioned by judges of that tribunal.''

In the New York University Law Review (vol. 33, p. 1193) Bertel M. Sparks in Future Interests made a careful analysis of contemporary legislative activity in this field and included a discussion of the New York 1958 statute. Turning to section 345 he noted (p. 1196) that '' [t]he retroactive aspect will no doubt be attacked as a taking of property without due process of law, but it appears that the opportunity to avoid the taking through the recording device should be sufficient to assure the statute's validity.''

Similar statutes with retroactive features, with similar opportunities for protection of existing rights by recording, have been upheld elsewhere against constitutional attack as Sparks noted. In 1957 the Supreme Court of Minnesota sustained the validity of the Marketable Title Act of the State requiring certain successive recordings to continue valid title (*Wichelman* v. *Messner,* 250 Minn. 88) and the same year the Supreme Court of Iowa upheld a similar statute in that State (*Tesdell* v. *Hanes,* 248 Iowa 742).

The loose-end nature of these contingent and future interests has been a source of marked difficulty in the administration of New York law. The fact owners of the rights could sit by, evincing no interest in them whatever, generation after generation, while the heirs at law (or distributees in modern terminology) spread out in family branches to evolve a multitudinous ownership after a century or two, left some titles of land in a state of doubt, uncertainty and confusion.

It was in the public interest to regulate this kind of title and to require, if it be intended to rely on it, that the intention be recorded. This is a reasonable and salutory public control of the use of a peculiar form of property which, without regulation, could adversely affect free alienability and development of land.

It is neither the impairment of contract nor a denial of due process to require a man who owns so tenuous and troublesome an interest to put it down in a public record.

Judgment should go to the plaintiff, without costs.

GIBSON, HERLIHY, REYNOLDS and TAYLOR, JJ., concur.

Judgment for the plaintiff, without costs.