Louis B. Heller, J.
In this action for separation commenced prior to September 1, 1967, plaintiff moves for leave to add a prayer for judgment of absolute divorce pursuant to subdivision (1) of section 170 of the Domestic Relations Law. The proposed amendment would rest upon the same factual allegations presently supporting one of the causes of action for separation — the cruel and inhuman treatment of plaintiff by defendant. All of the acts of alleged mistreatment took place prior to September 1, 1967.
*417 The prime question to be resolved here is, of course, whether the benefits conferred by the amended divorce laws are retroactive in effect. It is settled law in this State that an amendatory statute may be applied prospectively only unless there is a clear intent to the contrary (Jacobus v. Colgate, 217 N. Y. 235, 240; Walker v. Walker, 155 N. Y. 77, 81; Waddey v. Waddey, 290 N. Y. 251, 254; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §52). A law is not per se unconstitutional merely because it may be retroactive in effect. There are no such prohibitions in either the Federal or New York State Constitutions except with respect to laws which may impair the obligation of contracts or “ ex post facto ” laws, which refer to penal laws alone (Matter of West, 289 N. Y. 423; Brearley School v. Ward, 201 N. Y. 358, 363; Matter of Bailey v. Bush Term. Co., 178 Misc. 1045, revd. 265 App. Div. 758, affd. 291 N. Y. 534).
Whether a statute is retrospective or prospective may be determined by a search for legislative intent. I have made an exhaustive study of such material as has been made available to me on the history of this legislation. I must confess that picking the collective legislative brain in this instance has not been a particularly rewarding experience. The Wilson-Sutton Bill which I am informed and believe was intended to be retrospective in operation (see Commentary by Philip H. Schaeffer, Counsel to Joint Legislative Committee, Appendix A, Hendler, Matrimonial Practice in the New York Supreme Court, p. 203, n. 39) was greatly modified in a number of respects by the “ Leaders’ Bill ” which was eventually enacted. The effective date except for the “ living apart ” grounds and other particulars not pertinent here, is the same in both bills. To that extent, although there are many who hold for retroactivity on all the grounds in section 170, it does not appear that the Legislature intended to make the first three grounds under section 170 prospective only. Mr. Schaeffer (Hendler, Matrimonial Practice in the New York Supreme Court, Appendix A, pp. 201, 202, supra) is of the opinion that “if the statute’s effective date is interpreted in accordance with the usual presumption against retroactivity” all the grounds in section 170 are prospective only and that the acts under these new grounds must have taken place after September 1, 1967. He does state, however, that “ Such an interpretation would obviously cause considerable hardship and serve no particularly useful social purpose.” There is nothing in the material I have seen including the televised report of the Senate debate preceding adoption of the bill on April 26, 1966 which shows an intent that the first three provisions, the “ fault ” grounds, be prospective only. Senator Hughes when *418 questioned on the “ living apart ” features (subds. [4] and [5]) gave it-as his view that these grounds were intended to be prospective only. Even here, although the matter is not now before the court, we would be bound not by what he thought the Legislature intended but by what it finally enacted.
A notable exception to the rule regarding retroactivity is the 1 ‘ remedial statute. ’ ’ With respect to such laws, where vested rights are not involved and there is no question of constitutional rights such as impairment of contract or violation of due process requirements, a retroactive construction is possible without express language in the legislation (McKinney’s, Statutes, § 54; Shielcrawt v. Moffett, 49 N. Y. S. 2d 64, affd. 268 App. Div. 352, revd. on other grounds 294 N. Y. 180; People ex rel. Collins v. Spicer, 99 N. Y. 225, 233).
“ Kemedial legislation” here as in every such situation requires definition. “Nice distinctions are often necessary (Jacobus v. Colgate, 217 N. Y. 235). The word ‘ remedy ’ itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance * * * . In the end, it is in considerations of good sense and justice that the solution must be found ”. (Matter of Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, 271.) I have no doubt that the divorce reform law is legislation which was intended to provide long overdue remedies whether viewed as a new remedy, where there was none before or a modification or enlargment of an existing remedy (Jacobus v. Colgate, 217 N. Y. 235, 242, supra; Shielcrawt v. Moffett, 294 N. Y. 180,188, supra; McKinney’s Statutes, §§ 35, 54). I find no area here which violates due process or a vested or contractual right in violation of the Constitution. On the contrary, I believe that a failure or refusal to accord a plaintiff with complaints of mistreatment on August 31, 1967 the same rights we would a plaintiff who complains of similar mistreatment on September 1, 1967 would be a denial of equal protection of the laws. Mr. Schaeffer points out that a plaintiff with a grievance which predates September 1, 1967 still has an escape hatch through subdivision (5) of section 170. Under this subdivision, plaintiff must go through with a separation action to a decree and then may after two years of “ living apart ” sue again for a divorce. Apart from the very obvious disability that this “ double feature ” with a two-year hiatus entails, as permitted by this provision, either party to the separation, in-. nocent or guilty, plaintiff or defendant, may become the plaintiff in the second stage divorce. There has been considerable criticism of this procedure which can convert an innocent victorious *419 party into a defendant with consequent loss of estate and survivorship rights (see Domestic Relations Law, § 176; EPTL 5-1.2; N. Y. County Lawyers’ Assn., Rep. of Spec. Committee on Matrimonial Law, Bar Bulletin, vol. 24, No. 2, p. 65; Comparison and Critique of Proposed Amendments to Divorce Law, Foster and Freed, N. Y. L. J., March 29, 1967, March 30, 1967).
Additionally I find that if there be any constitutional objections to a finding of retroactivity in a situation such as I now have before me, the same objections could be raised against the delayed fuse approach on the second round divorce action. I am aware that indulging the plaintiff’s request for leave to add a plea for divorce at this time accomplishes ‘ ‘ instant conversion ” but I see no injustice in it. To sentence this plaintiff and others similarly situated to a state of “ Holy Deadlock ” (N. Y. County Lawyers ’ Assn., Rep. of Spec. Committee, p. 64, supra) for two years would disturb me more.
Essentially this new legislation is a product of compromise and concession. It is and was intended as a long stride forward in the modernization and liberalization of our medieval divorce law. Discovery of legislative intent is a task which the courts are required to assume. I would be abrogating my duties and responsibilities as a Justice of this court if I shirked it. We live in a progressive era. Law and society must respond to changes not only by legislation but also by judicial construction. Judge Jerome Frank has put the matter very well in the following except from his book, Courts on Trial (chap. 21, Legislation and Interpretation, p. 307): “ Some judges say that when doubt exists whether a statute was meant to be broadly construed, the safer and appropriate course is for the court to construe it narrowly, leaving it to the legislature, if it disagrees with the court, to amend the statute. This sounds reasonable. But there are those who argue that to play safe may be the means of negating the statute’s purpose; for often much legislative inertia must be overcome to bring about an amendment: the legislature has to relearn the problem; and new, pressing matters may crowd out for years a consideration of an existing statute narrowed in scope by the courts. ’ ’
I have spent many hours in an agonizing assessment of these new laws. Their impact on matrimonial litigants is far greater than any action for money alone and upon occasion even more serious than involvement in criminal prosecutions. There are, of course, no appellate determinations on this important new legislation to guide us. I am informed that at a conference in *420 Crotonville, most all of the Trial Justices present indicated their intention to interpret the “ fault ” grounds retroactively (Gershenson, The Divorce Reform Law: A Brief for Retroactivity, N. Y. L. J., July 26, 1967, n. [46]). There have been some decisions by Justices in this area which have indulged this retro-activity and granted similar applications (Taplinger v. Taplinger, 55 Misc 2d 103 [Bloustein, J.]; Fitzpatrick v. Fitzpatrick, 55 Misc 2d 7 [Galloway, J.];Goldman v. Goldman, N. Y. L. J., Oct. 26, 1967, p. 19, c. 2 [Holtzman, J.]; Smith v. Smith, 55 Misc 2d 172 [Heller, J.]). There have been other determinations by courts which have been ‘1 reported ’ ’ unfortunately only in the daily papers. In none of these decisions has the problem of retroactivity been brought to the fore and fully discussed. It is, I believe, essential that we have an expression of opinion by an appellate court at the earliest possible moment.
The motion is granted and the summons deemed amended accordingly. The complaint and answer are stricken, the matter is marked off the calendar and plaintiff is directed to comply in all respects with the requirements for conciliation pursuant to article 11-B. A new complaint shall be served 120 days after the date of entry of an order hereon or upon completion of conciliation procedures, whichever is earlier. Defendant may serve a new answer as may be appropriate within 20 days after service of the complaint. I do not now pass on the sufficiency of the proposed pleading or the validity of plaintiff’s cause of action. Those are matters which should be determined by proper motion or left to the competency and discretion of a trial court (Vatis v. Vatis, 18 A D 2d 936; Martin v. Katz, 15 AD 2d 767).
I see no reason at this point to disturb the order for alimony and counsel fees previously granted. Such a disposition was proper when made and would still be proper under section 236 of the Domestic Relations Law in the action for separation alone. If defendant deems it advisable or necessary to apply for revision of the same, such a review may be accomplished by motion or on trial in the normal course.
Settle order on notice, the entry date of which shall be the date of commencement of the divorce action for the purposes of section 215-c of the Domestic Relations Law.