The PRESBYTERY OF SOUTHEAST IOWA, a corporation, Appellee,

v.

Pleasant HARRIS et al., Appellants.

No. 2-56711.

Supreme Court of Iowa.

Feb. 19, 1975.

William L. Meardon, of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellants.

Oehler, Radig & Hoy, Iowa City, for appellee.

RAWLINGS, Justice.

Plaintiff commenced a quiet title action. Some of the named defendants, as alleged holders of a reversionary interest, challenge applicability and constitutionality of The Code 1971, Section 614.24, quoted *infra*. On motion by plaintiff a summary judgment was ultimately entered adverse to defendants and those appearing now appeal. We affirm.

By petition filed July 28, 1971, the Presbytery of Southeast Iowa, a Corporation,

asserts in relevant part: (1) H. B. and Elizabeth Cline, by warranty deed bearing date November 18, 1898, conveyed lots 9 and 10, Block 5, Cline's Addition to Hills Siding, Johnson County, Iowa to the First Presbyterian Church of Iowa City; (2) the aforesaid conveyancing instrument contains this pivotal provision:

"It is further agreed that if said church building is not erected on said premises within two years from No. 1st, 1898, or if erected and services shall be permanently discontinued, then said premises shall revert to the grantors or their heirs and assigns."

(3) Presbytery acquired title to said property January 17, 1970, under warranty deed given by the First Presbyterian Church of Iowa City; (4) defendants, as holders of an alleged reversionary interest under the aforesaid 1898 deed, claim a right in the real estate therein described by reason of a breach of the quoted provision which apparently occurred sometime after July 4, 1965; and (5) any such claim asserted by defendants stands extinguished because of their failure to comply with the provisions of Code § 614.24.

Five of the named defendants, as heirs of H. B. and Elizabeth Cline, allege by answer they possess a reversionary interest in the above described property. They also thereby aver Code § 614.24 is inapplicable to their interest and alternately, if applicable, is "unconstitutional as far as any extinguishment of the rights and interests of these Defendants in the above described real estate is concerned for the reason that it deprives these Defendants and other owners or holders of reversionary interests in real estate of their property and rights without notice and without due process of law contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States and Section 9 of Article I of the Constitution of the State of Iowa."

May 11, 1972, plaintiff moved for an adjudication on law points (Iowa R.Civ.P. 105)

regarding the constitutionality of Code § 614.24.

June 19th trial court adjudged said enactment constitutional and applicable to defendants.

July 17, 1973, plaintiff filed motion for summary judgment thereby alleging defendants had not filed notice as to any claimed reversionary interest within one year after July 4, 1965, as required by § 614.24.

August 21st trial court entered summary judgment for plaintiff from which this appeal is taken.

In support of a reversal defendants Faye Amish, H. Ray Cline, Robert Cline, Thomas B. Cline, William Cline and Marjorie Harr, here contend § 614.24 (1) unconstitutionally impairs contract rights; (2) is unconstitutionally vague; (3) authorizes a divestment of property rights in violation of substantive due process; (4) is violative of procedural due process in that no reasonable notice is afforded a claimant, owning a reversionary interest, of his obligation to record said interest in order that the same may not be extinguished.

█ Since the first two assignments above set forth are here asserted for the first time they will not be entertained save and except as incident to a determination of other issues properly presented. See Schnabel v. Display Sign Service, Inc., 219 N.W.2d 546, 548 (Iowa 1974); State v. Willis, 218 N.W.2d 921, 923 (Iowa 1974).

As to the first contention see, however, Jackson v. Lamphire, 3 Pet. 280, 290, 7 L.Ed. 679 (1830); Trustees of Schools of Township No. 1 v. Batdorf, 6 Ill.2d 486, 130 N.E.2d 111 (1955); Evans v. Finley, 166 Or. 227, 111 P.2d 833, 836–837 (1941).

And with regard to the second assertion see generally Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758, 772 (Iowa 1971); "Marketable Title Legislation—A Model Act for Iowa", 47 Iowa L.Rev. 389 (1962); Code §§ 4.1(2), 4.2, 4.4.

The third and fourth assignments will be considered in their respective order.

■ I. At the threshold it is understood the above stated 1898 deed proviso created what is known as a "possibility of reverter." See Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 570, 1 N.W.2d 721 (1942); Trustees of Schools of Township No. 1 v. Batdorf, *supra*; 4A Thompson on Real Property, § 1978 (1961); Simes, Law of Future Interests, § 13 at 28 (2d ed. 1966); Restatement, Property, § 154(3); 28 Am.Jur.2d, Estates, §§ 182–183.

■ II. In approaching the task at hand we accord recognition to some other statutes not here directly involved because a reading thereof will disclose an underlying motivating purpose common to all. See Chicago & North Western Ry. Co. v. City of Osage, 176 N.W.2d 788, 792–793 (Iowa 1970); 2A Sutherland, Statutory Construction, § 56.02 (4th ed. 1973); 73 Am.Jur.2d, Statutes, §§ 155–158; 82 C.J.S. Statutes § 366, p. 801.

Code § 614.17 has been described as the first of our "Marketable Title Acts." See 2 Patton, Titles, § 563 at 443 (2d ed. 1957); 1 Flick, Abstract and Title Practice, § 357 at 345 (2d ed. 1958). In material part said statutory enactment recites:

"No action based upon any claim arising or existing prior to January 1, 1960, shall be maintained * * * to recover any real estate * * * or establish any interest therein or claim thereto * * * against the holder of the record title to such real estate in possession, when such holder of the record title and his grantors immediate or remote are shown by the record to have held chain of title to said real estate, since January 1, 1960, unless such claimant * * * shall within one year from and after July 1, 1970, file in the office of the recorder of deeds of the county wherein such real estate is situated, a statement in writing * * * describing the real estate involved, the nature and extent of the right or interest claimed, and stating the facts upon which the same is based."

Standing under the spotlight in the case at hand is Code § 614.24, which provides:

"*No action based upon any claim arising or existing by reason of the provisions of any deed* or conveyance or contract or will reserving or providing for any reversion, reverted interests or use restrictions in and to the land therein described *shall be maintained either at law or in equity* in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession *after twenty-one years from the recording of such deed of conveyance* or contract or after twenty-one years from the admission of said will to probate *unless the claimant* shall, by himself, or by his attorney or agent, or if he is a minor or under legal disability, by his guardian, trustee, or either parent or next friend, *shall file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded or will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965.* Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired. For the purposes of this section, the claimant shall be any person or persons claiming any interest in and to said land or in and to such reversion, reverter interest or use restriction, whether the same is a present interest or an interest which would come into existence if the happening or contingency provided in said deed or will were to happen at once. Said claimant further shall include any member of a class of persons entitled to or claiming such rights or interests." (Emphasis supplied).

And Code §§ 614.29–614.38, collectively referred to as our "Marketable Record Title Act", constitute the most recent and com-

prehensive legislative effort to simplify land transfers in this jurisdiction. See Marshall, Iowa Title Opinions and Standards, at 77–81 (Cum.Supp.1970).

We are persuaded the aforesaid statutes clearly represent a salutary attempt on the part of our General Assembly to keep pace with public demands for needed reforms in the field of land title conveyancing practices. As this court observed in Chicago & North Western Ry. Co. v. City of Osage, 176 N.W.2d at 793, they are "designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable—in substance to improve and render less complicated the land transfer system." See also Basye, Trends and Progress—The Marketable Title Acts, 47 Iowa L.Rev. 261 (1962); Aigler, Constitutionality of Marketable Title Acts, 50 Mich.L.Rev. 185 (1951); American Bar News, Vol. 19, No. 10, at p. 1 (November 1974).

The necessity for such reformational action has been vigorously articulated by distinguished members of the legal profession. In a 1974 Report of the Special Committee on Residential Real Estate Transactions of the American Bar Association is this relevant statement at 14–16:

"Our system of public land title records was designed to fit the needs of a rural community. It was invented by the Massachusetts colonists and has not been essentially changed in the interim. The records are so scattered in different offices or so badly indexed, or both, as to make the task of separating the relevant from the irrelevant long and arduous. Where lawyers resort to direct examination of these records the cost, in terms of their time, is clearly apparent.

"* * *

"A second means of reducing title costs can be achieved by shortening the period of search. While the invention of the recording system was a great improvement over the then existing English system, or non-system, it would have been a greater improvement if a limit had been placed on the duration of the notice created by recording. While the various statutes of limitations can be relied upon to bar many ancient claims, there are other interests as to which the applicable statute does not begin to run until the interest has been violated. A purchaser needs, of course, to know about these. As a consequence, in theory, it is necessary to trace every title back to its origin in the state. To do so is already impracticable in much of our country and will ultimately become so elsewhere. As a consequence, conveyancers conventionally limit search to an arbitrary number of years. Aside from the fact that this practice is resorted to at the risk of the lawyer's client, the periods set, ranging up to sixty or more years, result in an enormous and unnecessary input of labor. What is needed is a theory of title which will permit the examining attorney to take title back for only a relatively short number of years with complete confidence that his client will be protected from all adverse claims antedating a record root of title. Much legislation is developing piece-meal, in a number of states, some based on shortening the applicable statutes of limitations, others based on a periodic re-recording requirement for certain specific interests, and others based on marketable title acts. All these approaches can be improved and extended. The Committee draws special attention to the need to amend the existing marketable title acts. Many commentators consider these acts the cornerstone for any systematic program of reform. However, all of the existing acts need strengthening and there are available no adequate models. The creation of effective models should therefore be given high priority."

Also pointing up the demands of the times are these unpublished remarks by the Honorable Warren E. Burger to the open-

ing session of the American Law Institute, May 21, 1974, at Washington, D. C.:

"When I began to practice law the newest associate in the firm was assigned the task of examining titles and closing real estate purchases, and he continued in that role until another new man came along. In that apprenticeship I examined many hundreds of land titles and closed an almost equal number of purchase and financing transactions.

"The cost at that time ranged from $15 to $30 for the purchase of the typical home. There is a growing practice of using title insurance either as a substitute for or in addition to the lawyer's title opinion.

"Today, we know that in many states the incidental costs of acquiring a new home, even in the $40,000 category, can run into· a very large sum. We know that, in common with others, the operating costs of lawyers have skyrocketed in recent years, but the very cost of the procedure today dictates that we examine the whole business closely.

" * * * The basic system of real estate titles and transfers and the related matters concerning financing and purchase of homes cries out for reexamination and simplification. In a country that transfers not only expensive automobiles but multimillion dollar airplanes with a few relatively simple pieces of paper covering liens and all, I believe that if American lawyers will put their ingenuity and inventiveness to work on this subject they will be able to devise simpler methods than we now have."

It is thus apparent the statutes heretofore noted were enacted in furtherance of the general welfare. See Evans v. Finley, 111 P.2d at 837–838; 47 Iowa L.Rev. at 426.

But this is not alone instantly dispositive.

III. We therefore turn to defendant's claim that § 614.24 serves to divest them of property rights in violation of constitutional due process standards.

■ At the outset this court has repeatedly held a strong presumption of constitutionality attends statutes regularly enacted by our General Assembly. See e. g., Keasling v. Thompson, 217 N.W.2d 687, 689–690 (Iowa 1974) and citations.

Referring again to Chicago & North Western Ry. Co. v. City of Osage, 176 N.W.2d at 792, we said Code § 614.24: " ' * * * is a true statute of limitations designed to bar claims which have no longer any social or economic utility and, at the same time, to provide for periodic renewal of active claims.' Marshall, Iowa Title Opinions and Standards, 12.3(E–1), page 70, pocket supplement (1966)." See also 51 Am.Jur.2d, Limitation of Actions, §§ 12–20. It is further evident § 614.24 is remedial or procedural in application. See Chase Securities Corporation v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945), reh. den. 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006; Home Building & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 429–430, 54 S.Ct. 231, 236–237, 78 L.Ed. 413 (1934); 2 Sutherland, Statutory Construction, § 41.09 (4th ed. 1973); 51 Am.Jur.2d, Limitation of Actions, §§ 21–22.

■ And, since § 614.24 permits extinguishment of an existing reverter interest in the absence of a recordation thereof, it clearly operates retrospectively as well as prospectively. See Schnebly v. St. Joseph Mercy Hosp. of Dubuque, Iowa, 166 N.W.2d 780, 782 (Iowa 1969); Iowa Land Title Examination Standards, ch. 11 at 43, Iowa State Bar Association (5th ed. 1974); 47 Iowa L.Rev. at 414; 51 Am.Jur.2d, Limitation of Actions, §§ 31–33; 73 Am.Jur.2d, Statutes, § 354; 16 Am.Jur.2d, Constitutional Law, § 404; 53 C.J.S. Limitations of Actions §§ 2–4; 82 C.J.S. Statutes § 421; 16A C.J.S. Constitutional Law § 418.

■ Furthermore, retrospective applicability of the statute in question does not render it unconstitutional per se. See Van Voorhis v. District of Columbia, 236 F.Supp. 978, 981 (D.D.C.1965); Thompson v. Thomp-

son, 78 N.W.2d 395, 399 (N.D.1956); Adelman v. Adelman, 58 Misc.2d 803, 296 N.Y.S.2d 999, 1004 (1969); Yoli v. Yoli, 55 Misc.2d 416, 285 N.Y.S.2d 470, 472 (1967).

IV. Defendants take the position that since their reverter interests did not vest until after enactment of § 614.24, the Act served to unconstitutionally deny them a vested future interest before right of enforcement thereof matured. We find no viability in that contention.

It is conceded this court has not heretofore been called upon to resolve the precise constitutional question now before us. Therefore, pertinent authorities from other jurisdictions, though not binding on this court, will be considered. See Simpson v. Low-Rent Housing Agency of Mount Ayr, Iowa, 224 N.W.2d 624 (Iowa, 1974).

In Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800 (1957), the Minnesota Marketable Title Act was found to be a constitutionally permissible limitations enactment barring a reverter interest. The statute there involved, M.S.A. § 541.023, stated in relevant part:

"As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, * * * after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the register of ·deeds [the required notice] * * *."

Plaintiff Wichelman's right of reverter had not been recorded as statutorily required and in holding as aforesaid the court stated, 83 N.W.2d at 820–821:

"We must reject the construction suggested by counsel amici curiae for plaintiff that the 40-year period does not begin to run in favor of a determinable fee or a fee subject to a condition subsequent until after a breach of the restriction. Applying that construction to the facts of the instant case, where the restrictions were created in 1897 and broken in 1946, the 40-year period would not expire until 1986; and if a restriction were created in 1800 and not breached until 2000, the 40-year period would not expire until the year 2040. Some other statute of limitations, or adverse possession, or laches would probably operate within 40 years after breach and § 541.023 would be unnecessary. The economic reason for which the original grantor imposed the restriction in either of these cases would probably have ceased long before its breach; yet unless it is breached the restriction has an indefinite duration. We may assume that in enacting this statute the legislature adopted the view that such a restriction on the fee is probably so scattered among numerous heirs and assignees that it is almost impossible to locate them. In the case before us the plaintiff who purchased quit-claims from the heirs was himself unable to acquire the total interest. Outstanding interests of this nature are likely to have merely nuisance value 40 years after their creation. They are the type of clogs at which the provisions of the act are aimed. Obviously the policy of preventing ancient records from fettering the marketability of the fee is frustrated by the construction contended for by the plaintiff. (Emphasis supplied).

" * * *

"The plaintiff argues that the right of reentry or reverter is an enforceable and vested right in land and asserts that the application of the statute as between parties to the same instrument may produce consequences in violation of the contract and due process of law provisions of our state and Federal Constitutions. In Scanlan v. Grimmer, 71 Minn. 351, 74 N.W. 146, where the purchaser of real estate assumed a mortgage and took title

and then attempted to repudiate the mortgage on the property he had purchased, the court held that one cannot accept the benefits conferred by a deed and repudiate the burden imposed by it. On this authority the plaintiff contends that the Marketable Title Act does not relieve the record owner of a fee simple title from the burdens and restrictions outstanding against such fee where the fee title itself is predicated upon the instrument which contains the right or condition to be extinguished.

"As we have heretofore noted, a statute of limitations necessarily deprives a person of an interest which he would be able to assert in the absence of the statute if he fails to commence action in the stated period. *Marketable title acts merely require filing notice rather than commencing an action; hence they may apply to vested future interests.* If § 541.023 *automatically* barred a vested right retroactively without providing an opportunity to protect that interest, the plaintiff's argument that vested substantial rights cannot be barred would have considerably more force. On the contrary, however, § 541.023 allowed nine months for any outstanding interest to be protected by the easy expediency of recording notice. No one has a vested right in any particular remedy and the legislature may change or modify the existing remedies for the enforcement and protection of the contract rights as long as an adequate remedy remains. (Authorities cited)." (Emphasis supplied).

Parenthetically we note this observation by Professor Basye as to the significance of *Wichelman, supra.* "Over 60 lawyers and law firms throughout the state appeared and filed briefs as amici curiae because of the decision's obvious potential effect on land titles." Basye, Clearing Land Titles, § 180 at 417 (2d ed. 1970).

Hiddleston v. Nebraska Jewish Education Society, 186 Neb. 786, 186 N.W.2d 904 (1971), involved the question as to whether a statute limiting duration of a possible reverter and right of entry or reentry for breach of a condition subsequent violated the United States and Nebraska constitutional due process or contract provisions. Noticeably the Nebraska statute did not afford owners of such barred estates an opportunity to file claims in order to preserve their reverter interests. Yet the court determined the enactment did not impinge on any constitutional due process or contract rights held by owners of reverter interests. In so holding the court declared, 186 N.W.2d at 907:

"The Legislature may reasonably have intended the reverter act to increase utility of land and marketability of titles by methods that were certain, uniform and inexpensive. See Note, 65 Colum.L.Rev. 1272 (1965). Section 76–2, 102, R.R.S. 1943, either on its face or in its application to plaintiffs, did not violate the due process or the contract clause of the United States or the Nebraska Constitution."

See also Hart and Wechsler, The Federal Courts and the Federal System, at 467 (1953).

In Town of Brookline v. Carey, 355 Mass. 424, 245 N.E.2d 446 (1969) plaintiff municipality acquired a parcel of land on which a school building was to be constructed. This acquisition was effected subject to a statute which created a possible reverter in event the property should be no longer used for school purposes. Apparently such usage terminated in 1933. In a later quiet title action the Town of Brookline contended defendant's (grantor's heir) reverter interest stood barred by M.G.L.A., c. 260, § 31A which stated:

"No proceeding based upon any * * * possibility of reverter * * * created before * * * [January 2, 1955], shall be maintained * * * after * * * [January 1, 1964], unless on or before * * * [January 1, 1964], (a) the condition has been broken or the reverter has occurred, and a person * * * having the right of * * * reverter shall have

taken possession of the land * * *, or (b) a person * * * who would * * be entitled if the reverter occurred * * shall * * * have filed in the registry of deeds * * * a statement * *."

Neither clause (a) nor (b) was satisfied.

Defendant asserted the above quoted statute was not applicable to a reverter which vested prior to enactment of M.G. L.A., c. 260, § 31A. In the same vein defendant contended the Act applied only to reverter interests which were not vested when said statute was enacted.

The Act was held applicable to all reverters whether vested before or after January 2, 1955, date of the enactment. It is clear, however, the constitutionality of M.G.L.A., c. 260, § 31A was tested only in light of reverter interests which vested *before* the effective date of said statute. See *Town of Brookline,* supra, 245 N.E.2d at 448.

Defendants urge us to accept, as controlling in this case, the decision in Board of Education of Central Sch. Dist. No. 1 v. Miles, 15 N.Y.2d 364, 259 N.Y.S.2d 129, 207 N.E.2d 181 (1965). Briefly stated, we respectfully decline defendants' invitation and in so doing adopt the position taken by Marshall, Iowa Title Opinions and Standards, at 80, n. 1 (Cum.Supp.1970):

"In Board of Education of Central School Dist. No. 1 v. Miles, 15 N.Y.2d 364, [259 N.Y.S.2d 129,] 207 N.E.2d 181 (1965) the New York Court of Appeals held a statute similar to Iowa Code §§ 614.24 to 614.28 unconstitutional when applied to a possibility of reverter. The court expressed the view that the legislature could not bar a remedy before the right to enforce it had matured. The lower court had held the statute constitutional, citing Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800 (1957) (sustaining validity of Marketable Title Act) and Tesdell v. Hanes, 248 Iowa 742, 82 N.W.2d 119 (1957). Board of Education of Central School Dist. No. 1 v. Miles, 18 App. Div.2d 87, 238 N.Y.S.2d 766, 772 (1963).

The New York Court of Appeals attempted to distinguish Wicehlman on the unconvincing ground that the reverter matured in 1946 and the action to enforce the reverter was not commenced until 1952. This analysis overlooks the fact that the Minnesota court emphasized the reversion claimant failed to file a claim as required by the Minnesota statute. No attempt was made by the court of appeals to distinguish Tesdell since it is unlikely a logical argument could be made to support the view that Tesdell's rationale would not be controlling. Certainly Tesdell, interpreting Iowa Code, § 614.17 (a statute of limitations) was relevant to the issue before the court.

"Finally, the New York Court of Appeals cites two law review articles, purportedly critical of the analysis in Wichelman. Aigler, A Supplement to 'Constitutionality of Marketable Title Acts'— 1951–1957, 56 Mich.L.Rev. 225, 232–237 (1957); Basye, Trends and Progress—The Marketable Title Acts, 47 Iowa Law Review, 261, 279 (1962). The citations are suspect when viewed in light of the conclusions of each author.

" 'Though one may have doubts as to the soundness of the court's construction and application of the act, the value of the decision on the constitutional question is not lessened. Indeed, if the court is right on the matter of construction, the case is an even more striking one on the constitutional phase.

" 'The same public policy that was found to be back of the Iowa and Minnesota statutes is behind the Michigan act. As well said by the Minnesota court, the obvious objectives sought to be effectuated by the legislature should be given significant weight in settling questions of construction. It is difficult to see how a Michigan court could fail to follow the lead of those recent decisions and do otherwise than conclude that the act is within the legislative power.' Aigler, supra at 233.

" 'If it is felt that possibilities of reverter or rights of entry are not sufficiently desirable interests to deserve recognition, their duration can *easily* be made a matter of statutory control.' Basye, supra at 279. (Emphasis added).

"The impact of the Court of Appeals decision is softened somewhat by the court's observation that it was not ruling on the constitutionality of marketable title acts in general."

Defendants also lean heavily on Biltmore Village v. Royal, 71 So.2d 727 (Fla.1954), wherein the court held a statute requiring legal action be commenced within one year from the effective date of the enactment in order to preserve restrictive covenants, violated constitutional proscriptions, i. e., the contract clause (Art. 1, § 10, United States Constitution) and due process clause.

*Biltmore, supra,* is to us readily distinguishable from the case at hand. As heretofore noted it was predicated on a statute which required commencement of an action in order to protect a reverter interest, not merely the filing of notice in order to preserve the reverter claim. See in this regard Wichelman v. Messner, 83 N.W.2d at 822; cf. Marshall, Iowa Title Opinions and Standards, 12.3(E–1) (Cum.Supp.1970).

On the other hand we neither here adopt nor express any opinion as to the propriety of the above holding in *Biltmore.*

V. At this point a Federal Court decision concerning the instantly involved issue comes into play.

Selectmen of Town of Nahant v. United States, 293 F.Supp. 1076 (D.Mass.1968), involved a factual setting comparable to that presented in *Wichelman, supra.* More specifically, the statute quoted in *Town of Brookline,* cited above, was invoked to bar an action for enforcement of a reverter interest not vested when the statutory limitation period expired.

Plaintiffs commenced an action for recovery of land conveyed in 1898 to defendant. The 1898 deed provided for reversion to the grantor in event the land should cease usage as a life saving station. Defendant alleged that as of January, 1964, the aforementioned use ended and by virtue of M.G. L.A., c. 260, § 31A, defendant held title free and clear of any plaintiff-asserted reversionary interest. Admittedly the reverter right did not come into being until after January 1, 1964, and no statutorily required statement was ever filed by plaintiff.

In upholding constitutionality and applicability of the aforesaid statute the court stated, 293 F.Supp. at 1078:

"Plaintiff argues that § 31A is unconstitutional, apparently on the ground that its application constitutes a taking of property without due process or an impairment of the obligation of contracts. But it is well established that a statute limiting the time for assertion even of preexisting property or contract rights is not unconstitutional provided it allows a reasonable time after its enactment for the assertion of those rights. (Authorities cited). The statute in question, Ch. 260 § 31A, was originally enacted in 1956, fixing the date for compliance as January 1, 1966, and amended in 1961 to make the date January 1, 1964. This clearly gave plaintiff reasonable time to take the required steps to protect any right of reverter which it might have in the land in question."

We also recognize the numerous commentators who persuasively argue that statutes premised on the theory the legislature may require periodic filing in order to preserve rights do not run afoul of constitutional limitations. See Basye, Clearing Land Titles, at 384 385, 476–508; Simes and Taylor, The Improvement of Conveyancing by Legislation, at 268–270, 289–292 (1960); Aigler, A Supplement to "Constitutionality of Marketable Title Acts"—1951–1957, 56 Mich.L.Rev. 225 (1957); Marshall, Reforming Conveyancing Procedure, 44 Iowa L.Rev. 75 at 80 (1958).

VI. And, as in *Hiddleston, supra,* 186 N.W.2d at 907, we are impressed with the

following articulation of those factors which a court should consider in analyzing the consequences of retroactive legislation:

"[W]hen one considers the great variety of cases, it becomes clear that no one factor is sufficient to explain the results which the Court has reached. Rather it is submitted that the constitutionality of such a statute is determined by three major factors, each of which must be weighed in any particular case. These factors are: the nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters. Since the great variety of cases in this field do not lend themselves to sweeping generalizations, it seems inappropriate to attempt to develop an ideal scheme for the Court to follow in cases involving retroactive statutes nor even to offer a formula for predicting the result in any given class of cases." Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692, 696–697 (1960).

Defendants' assertion to the effect § 614.24 denied them due process of law because it retroactively eliminated vested rights before right of enforcement arises simply fails under any applicable test. The public interest served by § 614.24 is self-evident. Its cognate enactment, Code § 614.17, in effect for over 40 years, serves to bar interests which have not been protected by timely filing of the required claim.

It is to us evident the above cited authorities reasonably and logically establish the constitutional propriety of marketable title statutes which operate retrospectively to bar an action on reverter interests. Furthermore, *Wichelman* and *Town of Nahant*, both *supra*, uphold this bar even where the reverter interest is contingent at time of expiration of the limitation period allowed for preservation thereof. We subscribe to these views. Code, § 614.24 requires nothing more than the filing of a notice of claim after which enforceability thereof is extended for an additional 21 years. "In other words, we do not have before us a statute which operates to bar the claimant's remedy before he has had an opportunity to assert it." Wichelman v. Messner, 83 N.W.2d at 822.

Therefore, § 614.24 does not abolish or alter any vested right. Rather, it modifies the procedure for effectuation of the remedy by conditionally limiting the time for enforcement of the right.

This court is therefore satisfied and now holds, Code § 614.24 did not serve to unconstitutionally deprive defendants of any vested rights.

VII. It is further apparent the time period allowed defendants for the preservation of their remedy under § 614.24 is not constitutionally unreasonable. See Selectmen of Town of Nahant v. United States, 293 F.Supp. at 1078; Wichelman v. Messner, 83 N.W.2d at 818; Trustees of Schools of Township No. 1 v. Batdorf, 130 N.E.2d at 115; 51 Am.Jur.2d, Limitation of Actions, §§ 31–35.

VIII. The remaining issue to be considered is whether Code § 614.24 denied defendants procedural due process because vested property rights were extinguished without adequate notice and opportunity for hearing.

Despite dicta contained in Board of Education of Central Sch. Dist. No. 1 v. Miles, 15 N.Y.2d 364, 259 N.Y.S.2d 129, 207 N.E.2d 181, 183 (1965), we conclude, enactments of our state legislature and publication thereof constitute adequate notification to all concerned as to what they contain. See Woodruff & Son v. Rhoton, 251 Iowa 550, 554, 101 N.W.2d 720 (1960); 58 Am.Jur.2d, Notice, § 21; 66 C.J.S. Notice § 13.

Defendants' contention regarding absence of notice is without substance.

IX. In summary we conclude and accordingly hold, defendants' contentions that

§ 614.24 authorizes a divestment of property rights in violation of (1) substantive and (2) procedural due process, are each and both devoid of merit.

Costs are taxed to appealing defendants Faye Amish, H. Ray Cline, Robert Cline, Thomas B. Cline, William Cline and Marjorie Harr.

Affirmed.

MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ., concur.

REES, REYNOLDSON and HARRIS, JJ., dissent.

REES, Justice (dissenting).

I am unable to agree with the majority in this case and respectfully dissent.

The salient facts of this case are worth repeating. Plaintiff brought an action to quiet title to certain real estate located in the town of Hills Siding in Johnson County by its petition filed July 28, 1971. The deed conveying title to plaintiff's grantors and immediate predecessors in title, executed and delivered in 1898, contained the following provision:

"It is further agreed that if said church building is not erected on said premises within two years from No. 1st, 1898, or if erected and services shall be permanently discontinued, then said premises shall revert to the grantors or their heirs and assigns."

Defendants are heirs of plaintiff's grantors and owners of the future interest created by the 1898 deed. They contested plaintiff's quiet title action on grounds they have an immediate possessory interest in the property subject of the 1898 deed because the condition in that deed was breached sometime after July 4, 1965. Plaintiff contends any interest defendants may have acquired in the property by virtue of the 1898 deed was extinguished when defendants failed to file a claim within one year after July 4, 1965 as required by

§ 614.24, The Code. Defendants admit they failed to file a claim pursuant to said section, but argue the statute is unconstitutional and ineffective to deprive them of their interest in the property.

I. The Fourteenth Amendment to the United States Constitution provides:

"(N)o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

Section 9, Article I, of the Iowa State Constitution similarly provides:

" . . . (N)o person shall be deprived of life, liberty, or property, without due process of law."

The majority characterizes the interest created by the quoted provision of the 1898 deed as a "possibility of reverter". That interest descended to defendants here as heirs of plaintiff's grantors.

Under Iowa law a possibility of reverter is both inheritable and alienable. Jacobs v. Miller, 253 Iowa 213, 111 N.W.2d 673, 675; Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 1 N.W.2d 721. Cf. Trustees of Schools of Township No. 1 v. Batdorf, 6 Ill.2d 486, 130 N.E.2d 111. Having such characteristics, a possibility of reverter must be considered a species of property. Persons such as these defendants who possess a possibility of reverter are therefore to be accorded the due process protection guaranteed by the state and federal constitutions.

At issue here is the constitutionality of § 614.24, The Code. Sophistry aside, the basic question before us is whether the statute deprives defendants of their interest in property without due process by operating to divest them of that interest when they fail to meet the statutory filing requirements. I am convinced that question must be answered affirmatively. The statute should be declared unconstitutional.

II. The majority views § 614.24 as a " 'true statute of limitations designed to bar claims . . . ' (citing Chicago & Northwestern Ry. Co. v. City of Osage, 176

N.W.2d 788, 792 (Iowa 1970), [which] does not abolish or alter any vested right [but merely] modifies the procedure for effectuation of the remedy by conditionally limiting the time for enforcement of the right." This, the classic defense of a statute such as § 614.24, involves no small measure of semantic gymnastics. See Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800. It is a defense I cannot abide.

A possibility of reverter is not simply a claim or right but an interest in property. Jacobs v. Miller, *supra.* See Simes, Law of Future Interests, 2d Ed., 1966, § 13, p. 28 et seq. Section 614.24 attempts to convert that interest in property into a mere right of action subject to defeasance if not timely asserted. Once that is recognized, it is clear the statute operates not simply to "bar claims" but to divert persons such as these defendants of existing property interests. It is not therefore a true statute of limitations. See Simes, Law of Future Interests, *supra*, § 51, pp. 111–112.

Even assuming a possibility of reverter is but a claim or right and not an interest in property, the characterization of § 614.24 as a statute of limitations does not stand close scrutiny under circumstances such as those presented here. Defendants' "claim" to the real estate in question "accrued" only when the condition in the 1898 deed was "breached". That breach apparently occurred sometime after July 4, 1965. As applied, § 614.24 would have required defendants to assert their "claim" before it accrued and operates potentially to bar their remedy before the "right" to enforce it matured. I know of no true statute of limitation which operates in that fashion. See Board of Education of Central School District No. 1 v. Miles, 15 N.Y.2d 364, 207 N.E.2d 181; Simes, Law of Future Interests, *supra* at 111. Town of Brookline v. Carey, 355 Mass. 424, 245 N.E.2d 446, which held an act limiting enforcement of reversionary interests that have "accrued" can constitutionally be applied to reverters which occurred *prior* to its enactment, supports this position.

III. Because § 614.24 does far more than simply bar claims, and in effect divests persons of their existing property interests, it cannot in the end be justified as a mere statute of limitation. Accordingly, the question must be whether the statutory procedure designed to forestall divestiture comports with constitutional guarantees of due process.

The statute contains no provision for notice. Statutory enactment alone was evidently deemed sufficient notice for those persons whose interests in property would be affected. I am not persuaded that manner of notice is "such as one desirous of actually informing . . . might reasonably adopt to accomplish it" (the constitutional standard for due process). Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865. *Cf.* Lane v. Traveler's Ins. Co., 230 Iowa 973, 299 N.W. 553 (decided nine years before *Mullane*).

Moreover, I am frankly unable to reconcile recent decisions broadening the due process rights of persons possessing interests in personalty with the procedural burden placed on persons under § 614.24 to take affirmative action to protect their interests in realty. See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 1997–1998, 32 L.Ed.2d 556; Thorp Credit, Inc. v. Barr, 200 N.W.2d 535 (Iowa 1972). See also North Georgia Finishing, Inc. v. Di-Chem, Inc. (opinion announced by United States Supreme Court, 1975; appearing in —— U.S. ——, 95 S.Ct. 719, 42 L.Ed.2d 751). Surely owners of interests in personalty are entitled to no more due process protection in Iowa than are owners of interests in realty.

IV. The majority characterizes the Iowa marketable title legislation as "a salutary attempt on the part of our General Assembly to keep pace with public demands for needed reforms in the field of land title conveyancing practices." I agree with that

characterization. The majority goes on to justify § 614.24 as a statute "designed to bar claims which have no longer any social or economic utility and, at the same time, to provide for periodic renewal of active claims." (citing Chicago & Northwestern Ry. Co. v. City of Osage, *supra*, at 792). There we part company.

Whatever its social utility, § 614.24 operates to deprive persons of their interests in property without due process. Paraphrasing a legislative commission report quoted by the New York Court of Appeals in Board of Education v. Miles, *supra*, where a similar statute was found unconstitutional as applied to a possibility of reverter, it is almost certain that an appreciable number of persons owning ancient but useful restrictions and other valuable interests in property similar to that owned by these defendants will lose them without compensation through failure to file claims under § 614.24, a prerequisite to their continued vitality. Such failure may occur under a variety of circumstances. Unless the owner of the interest has regular occasion to be on the watch for new legislation or unless he is regularly engaged in transactions involving real estate, he might never have learned of the requirement for filing a claim under the statute.

For the foregoing reasons I am satisfied § 614.24 of the Code violates both substantive and procedural constitutional guarantees of due process. Trial court erred in upholding the statute and in refusing to recognize defendants' interest in the subject property.

I would reverse trial court.

REYNOLDSON and HARRIS, JJ., join this dissent.