MALCOLM HETHERINGTON, Appellee, v. C. L. ROE, Appellant.

No. 47339.

(Reported in 35 N. W. 2d 14)

DECEMBER 14, 1948.

Stilwill, Brackney, Stilwill & Wilson, of Sioux City, for appellant.

Thos. J. Griffin, of Sioux City, for appellee.

HALE, J.—This is an action on a judgment in the state of North Dakota on a counterclaim in a suit commenced on a promissory note in said state, in which suit the defendant herein, Roe, a resident of Iowa, was the plaintiff, and the plaintiff in this proceeding, Hetherington, was the defendant.

In the present proceeding defendant, Roe, answered, and thereupon plaintiff, Hetherington, filed a motion for judgment on the pleadings which was sustained.

There is no dispute about the issues presented by the proceedings on the foreign judgment. They were, first, could the Iowa court inquire into the validity of the North Dakota judgment sued on; and second, if it could, was it a valid judgment which was entitled to recognition or enforcement by the Iowa courts under the full faith and credit provision of the Federal Constitution?

Following is the substance of the facts as stated by the defendant, and which statement the plaintiff concedes is accurate although not all facts are completely set out in the defendant's

brief and argument. In February. 1944, the defendant, C. L. Roe, was plaintiff in a suit in which Hetherington was the defendant in the county court of Cass County, North Dakota, on a promissory note. Thereafter a written stipulation of dismissal was executed by the parties which on its face dismissed the suit without prejudice, but no papers pertaining to the suit were filed in the county court of Cass county. Afterwards, on June 29, 1944, Roe, plaintiff in the North Dakota suit, through his attorneys issued a garnishee summons and affidavit of garnishment in the county court of Cass county as provided by the statutes of such state on account of the promissory note due from Hetherington to Roe, and served the same upon the Northern Pacific Railway Company, but no instruments, summons, complaint or process of any kind in said action was ever served upon Hetherington, nor filed in court as required by statute. Defendant alleges that by reason thereof the action was abandoned and the garnishment proceedings became void and of no effect from the beginning. Thereafter, Hetherington caused to be served on the attorney for Roe a notice and demand for a change of place of trial from the county court of Cass county to the district court of Burleigh County, North Dakota, because the residence of Hetherington was in that county. Roe filed in the county court of Cass county a return objecting to such a change on the grounds that the court had no jurisdiction over the parties or the subject matter; that no summons, complaint, affidavit for garnishment, or garnishment summons were ever served upon Hetherington, but afterwards, on July 27, 1944, Hetherington served on the attorney for Roe his answer and counterclaim in the district court of Burleigh county.

No summons or process was served on Roe requiring him to answer the counterclaim, and no answer to the counterclaim of Hetherington was ever filed, nor was there any appearance on behalf of the defendant in the district court of Burleigh county. Subsequently, on October 22, 1944, defendant Hetherington filed in the county court of Cass county the answer and counterclaim which were entitled in the "District Court for the Fourth Judicial District of North Dakota within and for the county of Burleigh," with proof of service on plaintiff's attorney, and on the motion of Hetherington order was made by the county court

of Cass county changing the place of trial to the district court of Burleigh county and all the papers were transmitted to said district court.

On February 7, 1945, the district court of Burleigh county rendered a default judgment against Roe in personam on the counterclaim in the amount of $629.95 for damages and costs of suit. Afterwards Roe made application to the district court of Burleigh county to vacate and set aside the judgment for want of jurisdiction of the court over the parties and of the subject matter, and after a hearing thereon the application was denied. Roe appealed to the supreme court of North Dakota from the order denying his application to set aside and vacate the judgment, assigning as errors the entry of the judgment without notice and the refusal to vacate the same, and the want of jurisdiction of the parties and of the subject matter. In the supreme court the decision of the lower court was affirmed. The opinion appears in 74 N. D. 692, 24 N. W. 2d 56.

Before the default judgment on the counterclaim was obtained in September 1944, Roe had instituted an action against Hetherington in the municipal court at St. Paul, Minnesota, to recover judgment on the note which had been sued on in North Dakota, and garnishment proceedings were connected therewith, and such proceedings resulted in the payment of the note and the dismissal of the action with prejudice on September 19, 1944.

The present action was brought in the district court of Woodbury County, Iowa, to recover judgment on the default judgment entered in the district court of Burleigh County, North Dakota. The answer of the defendant in this action set out the proceedings in North Dakota and questioned the jurisdiction of the North Dakota court over the subject matter and the person of defendant. Plaintiff's motion for judgment on the pleadings was sustained and judgment thereon entered in favor of the plaintiff, Malcolm Hetherington, and against the defendant, C. L. Roe.

A full and complete statement of the facts involved in the proceedings in North Dakota is set out in the opinion above referred to, the case of Roe v. Hetherington, August 29, 1946, 74 N. D. 692, 24 N. W. 2d 56.

The motion for judgment on the pleadings was filed on

December 23, 1947. The motion urged the full faith and credit clause (Article IV, section 1) of the Constitution of the United States; that the identical questions involving the jurisdiction of the North Dakota courts were raised in such courts and decided adverse to the defendant, and that the defendant cannot relitigate the question of the jurisdiction of the North Dakota court after having voluntarily appeared in the North Dakota courts and argued the question of their jurisdiction therein, and that every question of law or fact, including questions of jurisdiction, has already been determined adverse to the defendant herein, as shown by the pleadings in this action and the admissions contained in said pleadings. On April 28, 1948, the Woodbury county court sustained such motion.

On appeal the contentions of the defendant are that the district court erred in the following respects: First, that the Iowa courts can inquire into the validity of the North Dakota judgment herein sued upon; second, the North Dakota court rendering the judgment sued upon had no jurisdiction of the person of the defendant or the subject matter of the counterclaim upon which the judgment was rendered, and the judgment was void and not entitled to recognition or enforcement in the Iowa courts under the full faith and credit provision of the federal constitution; and third, the answer of the defendant states on its face a good defense to plaintiff's cause of action.

On the other hand the plaintiff, appellee in this action, argues that a judgment rendered by a court of competent jurisdiction on the merits constitutes a complete bar and estoppel to a subsequent action between the same identical parties, based upon the same claim or demand or cause of action. The adjudication also includes all matters incidental to or essentially connected with the subject of the action, which might have been put in issue and adjudicated. Second, full faith and credit must be given to the judgments of courts of other states, both under the provisions of the United States Constitution and through comity. And third, the answer of the defendant having admitted the North Dakota adjudication left the Iowa courts without jurisdiction to relitigate the same controversy, including the question of jurisdiction.

**██ ██ I.** We think there can be little doubt that in considering a prior adjudication by a sister state this court can inquire into jurisdiction of such state. There must, of course, have been jurisdiction of the person as well as the subject matter. As to jurisdiction of the person the original suit was brought by Roe. He appeared in the proceedings both in the lower court and the supreme court of North Dakota. Having so appeared he cannot now be heard to deny the jurisdiction of his person, unless thereafter, by some proceedings, such jurisdiction was lost.

**II.** Defendant makes no contention as to the binding effect of a prior adjudication, nor could he well do so as to such an established doctrine. Wheatley v. City of Fairfield, 221 Iowa 66, 75, 264 N. W. 906, and cases therein cited. But the rules as to judgments of other states present some other questions.

**██ III.** The full faith and credit clause of the constitution is binding upon courts of sister states, but jurisdiction may be inquired into. Defendant argues that a judgment without jurisdiction of the person or the subject matter is not entitled to recognition or enforcement in another state, or to the full faith and credit provided for in the Federal Constitution. We may assume this statement of the law to be correct. Sullivan v. Kenney, 148 Iowa 361, 376, 126 N. W. 349, but the burden is upon the defendant to establish such lack of jurisdiction. The first contention of the defendant on this point is that there was no action pending in the district court, Fourth Judicial District, Burleigh County, North Dakota, on the twenty-seventh day of July, 1944, when the plaintiff served on the defendant his counterclaim entitled in the "District Court of the Fourth Judicial District of North Dakota within and for the County of Burleigh," and upon which counterclaim the said district court rendered judgment by default; that this defendant was not in the Burleigh county district court when the counterclaim was served, the proceedings being in the county court of Cass County, North Dakota, which proceedings were transferred to the district court of Burleigh county.

The supreme court of North Dakota disposed of this contention by saying at page 703 of 74 N. D., page 61 of 24 N. W. 2d:

"The plaintiff contends that, though at first he had stipulated a change of venue, the stipulation for dismissal settled the original case and that thereafter there was nothing before either court. He argues: that the old matter was ended; that the county court had no case before it justifying garnishment proceedings and that he dismissed those; that the amended answer containing the counterclaim had been drafted and served after the stipulation for dismissal was executed; that it could not be considered as a new case brought by defendant for no service had been made upon the plaintiff; because of that and the stipulation for dismissal the district court had no jurisdiction of any case. He admits the making of the affidavit for garnishment, the issuance of the garnishment summons and the service of these papers upon the garnishee, all begun in the county court and under the title of the present action; but states that such proceedings on his part did not initiate a new case.

"It appears to be the theory of the appellant that where there is consent of the parties to a change of venue the place of trial is changed ipso facto. If this theory be correct then of course the district court had jurisdiction of the case immediately upon the execution of the consent to the transfer.

"If such consent be not in itself sufficient to transfer the case, but needs to be supplemented by an order from the county court transferring the files and papers, then the venue remained in the county court. Thus the stipulation for dismissal is the crucial point in the case, for the record shows that after the stipulation for dismissal had been signed the county court ordered the transfer of the entire case to the district court, thus giving that court jurisdiction over whatever case there was."

IV. The stipulation for dismissal entered prior to that time is found in the proceeding in the North Dakota court not to be a dismissal, quoting section 28-0801 of the North Dakota Revised Code of 1943, which provides that an action may be dismissed " 'by either party with the written consent of the other * * *.' " But the court holds that a dismissal of an action requires some action by the court or court officer, citing section 28-0802 of the North Dakota Revised Code which provides:

" 'When an action is dismissed * * * pursuant to the written consent of the parties thereto, such dismissal may be made by an entry in the clerk's register.' "

The court in the case in North Dakota therefore held that more than a mere stipulation is necessary to dismiss an action; that an entry in the clerk's register must be made or some action taken by the court, and that upon such stipulation either party could move the court for judgment of dismissal or either party could take the stipulation and file it with the clerk and have the entry made. The decision in Roe v. Hetherington in North Dakota held that there was no valid dismissal, and the action was still pending at the time of the filing of the counterclaim. This then is the interpretation of the court of last resort of North Dakota.

V. Defendant herein sets out section 28-0714 of the North Dakota Revised Code as to counterclaim:

"The counterclaim mentioned in section 28-0710 must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action and arising out of one of the following causes of action:

"1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action; or

"2. In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action."

The defendant herein charges that the counterclaim was not an existing claim when the suit was commenced by the defendant and it did not arise out of the contract sued on nor was it connected therewith and could not be pleaded under the North Dakota statute. With this statement of the defendant we cannot agree, and such was not the interpretation of the North Dakota court in the Roe case.

VI. As stated, the only question that can properly be raised by the present inquiry is that of jurisdiction. Defendant alleges that no jurisdiction can be found under the statutes of North Dakota. However, such statutes were interpreted by the supreme court of such state and held against the contention of

the defendant. That court not only found that it had jurisdiction but found also that the statutes of the state authorized such jurisdiction. We are satisfied that the statutes and rules of procedure as interpreted by the supreme court of a state should be so interpreted by other courts. This also is true as to the rules of pleading and procedure in the foreign state. We cannot here review the original proceeding or retry the case. The highest court in North Dakota has determined the law governing these various proceedings and we should follow the law as so determined. Clemmer & Dunn v. Cooper, 24 Iowa 185, 95 Am. Dec. 720; Chaloupka v. Martin, 179 Iowa 1173, 162 N. W. 567; 50 C. J. S., Judgments (Foreign Judgments) 441, section 867, and page 502; 34 C. J. 1107, section 1574, 50 C. J. S., Judgments, section 869; 31 Am. Jur., Judgments, sections 534, 535.

In the proceedings in North Dakota the principal contention of the plaintiff, Roe, was the alleged dismissal between the parties, but there was also in issue the validity of the garnishment proceedings. The same issues were tried and determined between the same parties in the district court of North Dakota, and affirmed by the supreme court of such state.

Both parties hereto cite various decisions of the supreme court of the United States, largely divorce cases. There is an element in actions for divorce which does not occur in other private litigation—the question of public interest. This accounts in part at least, especially as to domiciliary requirements, not present here, for a variance in the holdings. Among other cases cited by the parties appear Williams v. State of North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, and an earlier case, Williams v. State of North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273, citing the noted case of Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, which case is quoted and referred to in Miller v. Miller, 200 Iowa 1193, 206 N. W. 262, and which was subsequently reversed by the United States Supreme Court.

It is unnecessary to consider to any great extent the various cases cited. So far as the decisions of the United States Supreme Court are concerned and so far as might apply to the facts in

this case, the companion cases of Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429, 1 A. L. R. 2d 1355, and Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451, 1 A. L. R. 2d 1376, decided in June 1948 are of interest and value. It is held in these latest cases that as to one against whom or in whose favor a decree of divorce has been rendered in a proceeding in which he personally appeared and was accorded full opportunity to contest the jurisdictional issues, the requirements of the full faith and credit clause are a bar and prevent him from collaterally attacking the decree on jurisdictional grounds in the courts of a sister state where the decree is not susceptible to such collateral attack in the courts of the state in which it was rendered. The cases also hold that the doctrine of res adjudicata must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause.

The question was raised both in the proceedings in North Dakota and in this proceeding as to the effect of the judgment rendered in the municipal court of St. Paul. The opinion in the supreme court of North Dakota sets out, and we agree with such finding, that the record shows this was a plain action upon the promissory note which was the subject of plaintiff's action in North Dakota. Assuming that judgment in Minnesota to be valid, nevertheless it dealt merely with that part of the action which concerned plaintiff's right under the note. It did not in any manner affect the counterclaim. The respondent in his evidence presented to sustain his counterclaim showed his payment of $150.40 and costs as part of the damage which he claims he suffered because of the harassment of the plaintiff. With this statement we agree.

Defendant cites various cases in North Dakota relative to the procedure and interpretation of the statutes of North Dakota which he claims were adverse in their holdings to the decision in the Roe case. Such matters were determined in the North Dakota decision, and having been determined cannot be considered here as affecting the jurisdiction of that court.

Holding as we do, that the courts of North Dakota had jurisdiction of the subject matter and the person, in the pro-

ceedings resulting in the judgment sued upon, it follows that the finding and judgment of the district court of Woodbury county should be and is affirmed.—Affirmed.

All JUSTICES concur.