The AMERICAN TITLE INSURANCE COMPANY, Appellee,

v.

STOLLER FISHERIES, INC., Appellant.

No. 2–56743.

Supreme Court of Iowa.

March 19, 1975.

Jack H. Bedell, Spirit Lake, and George T. Qualley, P. C., Sioux City, for appellant.

Wilbur E. Hanson, Spirit Lake, Jacobson, Bristol & Thomson, Waukon, and Duncan, Jones, Riley & Finley, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Trial court entered summary judgment for plaintiff American Title Insurance Company against defendant Stoller Fisheries. The latter appeals and we affirm.

The following facts appear from various pleadings, exhibits and affidavits in the record before us.

Stoller is an Iowa corporation located at Spirit Lake, Iowa. It is engaged in the purchase, distribution and sale of fish and seafood products. Stoller contracted to purchase seafood products from Gorton Corporation, a Massachusetts corporation located at Gloucester, Massachusetts.

December 27, 1965, Gorton brought suit in Florida circuit court against Stoller on an account in the sum of $9587.90. Service was had by serving Stoller's president, who had a winter home in Miami. Stoller at that time owned a business rental property in Florida.

Stoller filed a motion to dismiss the Florida litigation, alleging lack of jurisdiction of person and subject matter, asserting, among other things, insufficiency of process and service of process. This Iowa corporation also filed an answer denying it was doing business in Florida and alleging the same grounds contained in its motion. When an order was entered denying its motion to dismiss Stoller took an interlocutory appeal to the District Court of Appeals for the Third District of Florida, where the order was affirmed.

Subsequently a final judgment was entered in the Florida circuit court against Stoller for the amount sued on with interest, a total of $11,312.56, and $23.50 costs.

Meanwhile, Stoller had contracted to sell its Florida rental property. American Title insured title for the Florida purchaser, but apparently overlooked the above judgment. In order to avoid liability to the purchaser, it thereupon paid Gorton off in consideration for a written assignment of the judgment.

August 11, 1972, American Title brought this action on the Florida judgment against Stoller in district court. Stoller's answer alleged the Florida court was without prop-

er jurisdiction to enter the judgment, but also asserted "the question of legal notice as well as jurisdiction of the Court was in fact questioned in the alleged cause of action in the state of Florida, and the same is reasserted here; * * *."

May 28, 1973, American Title filed motion for summary judgment in the amount (increased by interest) of $14,446.98. The motion was accompanied by affidavits, properly certified copies of the Florida court proceedings, and a certified copy of the recorded judgment assignment. This motion was ultimately set for a July 18, 1973 hearing.

On July 16, 1973, two days before the assigned hearing date, Stoller filed motion for leave to amend its answer. Attached was a proposed amendment to answer consisting of three counterclaims in separate divisions. These counterclaims were grounded on American Title's alleged negligence in not discovering the Florida judgment and in interfering with Stoller's prospective advantage in negotiating a settlement of the judgment with Gorton. Damages were claimed on each of the three counterclaims in sums ranging from $13,110.92 to $15,656.28.

There is nothing in this record to show Stoller's motion for leave to amend was ever ruled on. Nor is there any inkling in trial court's summary judgment ruling that it gave these "counterclaims" any consideration in reaching its decision.

Stoller asserts this appeal presents two issues for review. Is American Title's cause of action barred by § 496A.120, The Code, which restricts the right of foreign corporations to sue in Iowa courts? Is summary judgment on the principal claim allowable when there is pending before the court compulsory counterclaims raising genuine issues of material fact?

I. Stoller argues American Title's action is barred by the following statute:

"*496A.120 Transacting business without certificate of authority.* No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority, nor shall any action, suit or proceeding be maintained in any court of this state by any successor or assignee of such corporation on any right, claim or demand arising out of the transaction of business by such corporation in this state, until a certificate of authority shall have been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets; provided, however, that no foreign corporation transacting business in this state shall maintain any action, suit or proceeding in this state upon any contract made by it in this state prior to the effective date of this chapter unless prior to the making of such contract it shall have procured a permit to transact business in this state as required by the laws in force at the time of making such contract, which prohibition shall also apply to any assignee of such foreign corporation and to any person claiming under such assignee of such foreign corporation or under either of them.

"The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state."

Stoller contends Gorton Corporation was never licensed to do business in Iowa; the underlying contract was an Iowa contract (a doubtful conclusion on the record before us); Gorton was doing business in Iowa (another questionable conclusion); and it could not therefore have sued Stoller on the contract in Iowa. To render Iowa judgment on the Florida judgment, Stoller argues, would allow Gorton (or its assignee American Title) to do indirectly what it

could not do directly and would evade the intent of § 496A.120, supra.

■ Of course, American Title, in bringing this litigation, is not required to obtain a certificate of authority. See § 496A.103 (" * * * a foreign corporation shall not be considered to be transacting business in this state * * * by reason of * * * 1. Maintaining or defending any action or suit * * * "); rule 5, Rules of Civil Procedure ("Foreign corporations may sue and be sued in their corporate name, except as prohibited by statute"). Stoller concedes this point.

While § 496A.120 has not had judicial interpretation, we have said its predecessor, § 494.9, "cannot be extended beyond its plain terms and clear meaning." Heyl v. Beadel, 229 Iowa 210, 214, 294 N.W. 335, 338 (1940).

■ We have held contracts in violation of § 494.9 were not void but merely unenforceable in Iowa courts. Credit Industrial Company v. Happel, Inc., 252 Iowa 213, 218, 106 N.W.2d 667, 669 (1960); Heyl v. Beadel, supra, 229 Iowa at 214, 294 N.W. at 338. We find no good reason to place any different interpretation on § 496A.120, and foresee clear constitutional dangers in departing from our precedential decisions, supra.

The distinction we drew in our decisions under the prior statute (§ 494.9) is important because, as noted in Heyl, it may allow the foreign corporation to sustain an action on the contract in another jurisdiction without the action being barred by the Iowa statute. See Kemp v. Darke County Farm Bureau Cooperative Ass'n, 115 Ohio App. 1, 184 N.E.2d 103 (1961); 36 Am.Jur.2d, Foreign Corporations § 304, p. 305; see also Strampe v. Minnesota Farmers' Mut. Ins. Co., 109 Minn. 364, 123 N.W. 1083 (1909).

■ As a general rule, if that action results in judgment for the foreign corporation the doctrine of merger would merge the contract in the judgment and no further action could be taken on the contract. See

Reinertson v. Consolidated Chemical Products Co., 205 Iowa 417, 419, 216 N.W. 68, 69 (1927); Harford, Thayer & Co. v. Street, 46 Iowa 594, 595 (1877); North & Scott v. Mudge & Co., 13 Iowa 496, 498–99 (1862); 46 Am.Jur.2d, Judgments § 390, pp. 555–56; 47 Am.Jur.2d, Judgments § 915, pp. 34–35; 50 C.J.S. Judgments § 870, p. 445, § 890, p. 491; see also Milwaukee County v. White Co., 296 U.S. 268, 275, 56 S.Ct. 229, 233, 80 L.Ed. 220, 227 (1935); Tomlin v. Woods, 125 Iowa 367, 374, 101 N.W. 135, 138 (1904).

■ Confining the sweep of § 496A.120 to its plain language, it is apparent the instant litigation is not a " * * * suit * * * on any right, claim or demand arising out of the transaction of business by [a foreign corporation] * * * in this state * * *." It is a suit on a judgment arising out of litigation in a foreign state. To adopt the interpretation which Stoller's rationale requires might well invalidate the statute as unconstitutional. Constitution of the United States, Article IV, Section 1 ("Full Faith and Credit shall be given in each State to the * * * judicial Proceedings of every other State."); Morris v. Morris, 197 N.W.2d 357, 359 (Iowa 1972) ("Full faith and credit must, of course, be accorded a valid judgment entered by any sister state."); see Spear v. Virginia-Carolina Chemical Corporation, 225 Ala. 17, 19, 142 So. 33, 34 (1932); 18 Fletcher Cyclopedia, Corporations § 8621, p. 31.

This is not to say avenues of attack are unavailable with respect to foreign judgments. But the fact the underlying action could not have been brought in the forum state does not appear to be one of them. See United States Supreme Court cases collected at 95 L.Ed. 1221, 1227–29; Milwaukee County v. White Co., supra, 296 U.S. at 276–78, 56 S.Ct. at 233–35, 80 L.Ed. at 228–29; Cuykendall v. Doe, 129 Iowa 453, 105 N.W. 698 (1906) (enforcing judgment on cognovit note); but see Acme Feeds v. Berg, 231 Iowa 1271, 4 N.W.2d 430 (1942)

(foreign judgment not enforced if cognovit clause contained in Iowa contract).

Generally, questions which have been litigated in an enforcement action on a foreign judgment have been limited in this state to jurisdiction and extrinsic fraud (see Stearns v. Stearns, 187 N.W.2d 733, 735 [Iowa 1971]) although other questions such as finality and effect of the foreign judgment may be considered. Morris v. Morris, supra at 359; Restatement (Second) Conflict of Laws § 100 et seq. and citations.

The only defense of this nature attempted to be raised by Stoller was the question of Florida's jurisdiction. It appears both from affirmative allegations in Stoller's answer and from the certified copies of the Florida proceedings, that this matter was thoroughly litigated and lost in the foreign state. There is authority indicating the issue may not be relitigated here. See Hetherington v. Roe, 239 Iowa 1354, 1359, 35 N.W.2d 14, 17 (1948). In any event, on this appeal Stoller does not raise any issue relating to the jurisdiction of the Florida court to enter judgment.

The disposition we make of this issue does not require us to consider the fact the initial Stoller-Gorton contract was apparently interstate in character and its enforcement in Iowa would not fall within the § 496A.120 prohibition. See Constitution of the United States, Article I, Section 8 (Commerce clause); Allenberg Cotton Co., Inc. v. Pittman, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 13 N.W.2d 347 (1944).

We hold American Title's cause of action in Iowa is not barred by § 496A.120, The Code.

II. We turn to the second issue, whether summary judgment on the principal claim should have been granted when there was pending before the district court compulsory counterclaims raising genuine issues of material fact. American Title does not contest these are compulsory counterclaims. Rule 29, R.C.P.; see Harrington v. Polk Co.

Fed. S. & L. Ass'n of Des Moines, 196 N.W.2d 543 (Iowa 1972).

Stoller's answer was filed August 16, 1972. American Title filed a reply on October 4, 1972, as required by rule 73, R.C.P., prior to the amendment eliminating that requirement in absence of a court order. See Acts 65 General Assembly, 1974 Regular Session, Ch. 1284. Stoller was therefore compelled to file motion for leave to amend, rule 88, R.C.P., which it did on July 16, 1973, with its back to the wall in defending the summary judgment motion to be heard two days later. As we have noted, the record does not disclose the motion to amend was ruled on, or that Stoller either moved for another continuance of the hearing (one had already been granted at its request) to permit trial court to rule on its amendment motion, or even requested trial court, following American Title's resistance filed July 18, 1973, to rule on its motion.

Stoller relies on two cases decided under our former summary judgment rules, Farm Service Company of Emmetsburg v. Askeland, 169 N.W.2d 559 (Iowa 1969) and International Milling Company v. Gisch, 256 Iowa 949, 129 N.W.2d 646 (1964). In both those cases, unlike the situation sub judice, the counterclaims were properly part of the pleadings and issues.

In the first cited case we held a permissive counterclaim would not bar summary judgment for plaintiff on the original action, but we instructed trial court to delay entry of the summary judgment until the counterclaim was adjudicated. The second case involved a compulsory counterclaim. We held under the former summary judgment rule a plaintiff who became in essence a defendant to a counterclaim could not be granted summary judgment on the counterclaim as that procedure was available only to plaintiffs. International Milling, supra, 129 N.W.2d at 650. Our current rule 237(b), R.C.P., allows defending parties use of summary judgment procedure. See Bauer v. Stern Finance Company, 169 N.W.2d 850,

851 (Iowa 1969). Neither of the above cases supports Stoller's position in this litigation.

■ If Stoller's counterclaims had been timely filed or later allowed, trial court, under our prior decisions, might properly have stayed entry of the summary judgment until those counterclaims were adjudicated. Farm Service Company of Emmetsburg v. Askeland, supra; see Harrington v. Polk Co. Fed. S. & L. Ass'n of Des Moines, supra, 196 N.W.2d at 547. This rule in the usual case would not only protect a counterclaimant from an absconding or insolvent plaintiff but would prevent segmented appeals of litigation, for entry of the summary judgment would trigger the 30-day appeal period. See rule 335(a), R.C.P.; Flynn v. Lucas County Memorial Hospital, 203 N.W.2d 613, 614–15 (Iowa 1973).

■ But in this case the record indicates the counterclaims were not yet a part of the pleadings. Stoller permitted months to elapse before moving to amend to assert these claims, a last-ditch move taken two days before the summary judgment motion was to be heard. In these circumstances, we cannot find trial court was wrong in ruling on the summary judgment motion without regard to Stoller's tardy motion.

In affirming, we do not pass on the merits of Stoller's counterclaims. Those are issues which under the unique posture of this litigation must now be determined if trial court sustains the motion to amend.

Affirmed.