STOLLER FISHERIES, INC., an Iowa Corporation, Appellant,

v.

AMERICAN TITLE INSURANCE COMPANY, a Foreign Corporation, Appellee.

No. 58737.

Supreme Court of Iowa.

Oct. 19, 1977.

Rehearing Denied Nov. 17, 1977.

Law Offices of George T. Qualley, Sioux City, for appellant.

Glenn L. Smith, of Duncan, Jones, Riley & Finley, Des Moines, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

Stoller Fisheries, Inc., an Iowa corporation with its principal place of business in Spirit Lake, Iowa, instituted an action in the Dickinson District Court to recover damages as a consequence of American Title Insurance Company's alleged tortious interference which prevented Stoller from deriving a prospective economic advantage from negotiating a settlement with Gorton Corporation.

Stoller's action seeking both compensatory and punitive damages was commenced April 25, 1975. American was a foreign corporation unlicensed to do business in the state of Iowa.

American in answer denied the tortious interference and pled three affirmative defenses. In the first affirmative defense it was alleged the cause of action was barred by rule 29, Rules of Civil Procedure, because Stoller failed to plead compulsory counterclaims against American in the first action between the parties. In the second defense it was alleged the action was barred by section 614.1(4), The Code, because it was commenced more than five years after the injury to Stoller. In the third defense it was alleged chapter 639, The Code, 1975, was unconstitutional in that it violated American's due process rights because it provided for attachment, levy and seizure of American's property without notice or opportunity to be heard prior to or immediately after the seizure.

Stoller filed no reply. American applied under rule 105, R.C.P., for an adjudication of law points on all three of its affirmative defenses. The trial court found for American on each defense. American then moved for summary judgment on all three defenses and the motion was granted. Stoller appeals both findings.

The present action is the second in this state between these parties. In the first (Case I) American, as plaintiff, commenced an action in the Dickinson District Court August 11, 1972, to enforce a Florida judgment against Stoller Fisheries, Inc. See *Am. Title Ins. Co. v. Stoller Fisheries*, 227 N.W.2d 481, Iowa, decided March 19, 1975. American had acquired the right of enforcement of the judgment by a written assignment of it executed April 15, 1970, by the Gorton Company, a Massachusetts corporation. Gorton had obtained the judgment in an action litigated by it in Florida against Stoller.

It is the assignment of Gorton's judgment to American which gives rise to Stoller's claim in this the second action (Case II) between the parties. The assignment was executed at the time Stoller was considering Gorton's offer to settle their judgment of $11,313.56 against Stoller for $5,658.28. Stoller maintains American, by inducing Gorton to assign its judgment to American, has tortiously interfered with Stoller's prospective economic advantage. This is not, however, the first time Stoller has asserted this claim.

In Case I two days before the hearing on American's motion for summary judgment,

Stoller moved for leave to amend its answer to include counterclaims. The basis of these counterclaims was the same as that in the present action—tortious interference with prospective economic advantage. August 22, 1973, before ruling on the motion to amend, the court granted American's motion for summary judgment. Stoller appealed claiming the court was without power to grant the motion for summary judgment when a motion for leave to amend to add compulsory counterclaims was still before it.

In Case I this court reviewed the trial court's granting of the motion for summary judgment for American. While not deciding Stoller's counterclaims were indeed compulsory, we did refer to them as such after pointing out that American did not contest Stoller's contention the claims asserted in the three divisions of its proposed amendment to answer were counterclaims. In any event, our decision in Case I did not turn on a determination whether Stoller's claims were in fact compulsory counterclaims. We affirmed the trial court's ruling and left for its decision the still pending motion to amend.

After our affirmance, the trial court considered Stoller's motion to amend. Before its ruling on the motion, the trial court received notice from Stoller that it had paid the affirmed judgment. The trial court later ruled denying Stoller's motion. The court's ruling is in pertinent part as follows:

" * * *

"As shown, the motion for leave to amend comes too late and attempts to substantially change Defendant's defense, the subsequent payment of the judgment and costs herein by Defendant reflects its acquiescence therein. Therefore Stoller's motion for leave to amend is hereby overruled."

Stoller did nothing to attack this ruling.

On the date Stoller paid the affirmed judgment, April 25, 1975, it attached the. money it paid into court by following the procedures set forth in chapter 639, The Code, 1975, and it also filed the present action against American. As noted earlier, this action reaches this court by Stoller's appeal of the trial court's findings for American on both an adjudication of law points and a motion for summary judgment.

Stoller's contentions present the following issues for review:

1. Does an act which renders a party liable to another person immediately set in motion the limitations period of section 614.1(4), The Code, 1975, on the party's claim the original act of the person constituted a tort upon the party?

2. Is a cause of action barred by the res judicata effect of rule 29, R.C.P., where in a previous suit between the same parties, the party's motion for leave to amend its answer to include compulsory counterclaims was denied and the party stood on that decision and now seeks to assert causes of action identical to the former counterclaims?

3. Is chapter 639, The Code, 1975, unconstitutional in violation of American's due process rights because it does not provide for notice or hearing prior to or immediately after attachment, levy and seizure of American's property?

I. Stoller contends its cause of action for tortious interference is not barred by section 614.1(4), The Code, 1975, because the cause of action did not arise until April 25, 1975, the date it paid the affirmed judgment. It is argued until that point in time Stoller had not suffered any damage and, therefore, it had no cause of action. In support of its argument Stoller points out "it was conceivable that American might have settled the case with Stoller, as was the apparent intention of Groton [sic]." Stoller contends it is not seeking relief from American's wrongful act of April 15, 1970, but rather from the consequences of that act which occurred April 25, 1975, when Stoller paid the affirmed judgment.

In support of its argument Stoller draws the court's attention to the following statement in *Wolfswinkel v. Gesink*, 180 N.W.2d 452, 456 (Iowa 1970):

" * * * [T]he wrong or negligence of the party charged gives in itself no right of action to anyone. The injury is traceable to the original wrongful or negligent act, but until the act produces injury to the claimant's interest by way of loss or damage, no cause of action accrues."

*Wolfswinkel* concerned an alleged injury due to failure of an insurance agent to procure for the plaintiffs therein a policy of insurance on their property. While the agent told plaintiffs he had procured the insurance, he had not done so. After their property was destroyed the plaintiffs demanded the insurer pay. The insurer declined to do so. Plaintiffs then sued the agent.

In one defense the agent claimed the action was barred by the statute of limitations. This court disagreed stating there is no injury in property insurance cases until the loss occurs, and, thus, the statute of limitations does not begin to run until such loss.

American, on the other hand, insists Stoller was damaged, if at all, April 15, 1970—the date of Gorton's assignment of its judgment against Stoller to American.

The question thus presented by the contentions of the parties is when did the statute of limitations, 614.1(4), commence to run on Stoller's claim for relief. Of course, the statute cannot commence to run until the cause of action accrues. *Chrischilles v. Griswold*, 260 Iowa 453, 461, 150 N.W.2d 94, 100.

"It is well settled, as a matter of judicial interpretation, that the date on which a cause of action accrues, and hence, the date from which the statute of limitations starts to run, is the date upon which the right to institute and maintain a suit first arises." *Montag v. Bergen Bluestone Company*, 145 N.J.Super. 140, 366 A.2d 1361, 1363.

In order to determine when Stoller's cause of action accrued it is necessary to consider first the nature of the theory of liability relied on by Stoller for relief.

"Intentional and unjustified third-party interference with valid contractual relations or business expectancies constitutes a tort, * * *. [citing authorities].

" * * *

"The fundamental premise of the tort—that a person has a right to pursue his valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party—has been crystallized and defined in * * * [Restatement, Second, Torts, section 766B, Tentative Draft No. 23 (April 1977)]." *Calbom v. Knudtzon*, 65 Wash.2d 157, 396 P.2d 148, 151.

Section 766B of this Tentative Draft provides:

"Intentional Interference with Prospective Contractual Relation.

"One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation when the interference consists of

"(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

"(b) preventing the other from acquiring or continuing the prospective relation."

The basic elements going into a prima facie establishment of the tort are set forth in *Calbom, id.*, as follows: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."

The same basic elements stated in somewhat different language are recognized in *Tom Olesker's Exc. W. F., Inc. v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 306 N.E.2d 549, 553, where the court said:

" * * * The essential allegations in such an action are the plaintiff's reasonable expectancy of entering into a valid business

relationship; the defendant's knowledge of this expectancy; an intentional interference by the defendant which prevents the expectancy from ripening into a valid business relationship; and damage to the plaintiff from such interference. * * * [citing authority]."

■ In light of the two foregoing pronouncements we conclude actual loss or resultant damage to the party whose relationship or expectancy has been disrupted by defendant's intentional and wrongful interference is an essential element of a cause of action for this tort. Consequently, if the alleged intentional and wrongful interference does not cause damage it generates no claim for relief predicated on this tort theory. Even a breach of duty not to interfere with Stoller's prospective contractual relationship causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—will not ordinarily suffice to create a cause of action under this tort.

■ The statutory period of limitations cannot run until events have developed to a point where the injured party is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages.

■ It is our view the mere possibility, or even probability, that an event causing damages will result from the mere breach of American's duty not to intentionally or improperly interfere with Stoller's prospective economic advantage expected to be derived by Stoller from negotiating a compromise settlement of the judgment held by Gorton Corporation against Stoller does not render American's alleged wrongful act actionable.

One of the grounds for American's motion for summary judgment in this matter rests solely on the proposition that the statute of limitations ran from the date of its assignment from the Gorton Corporation of the judgment held by it against Stoller.

The alleged wrongful act of American in obtaining the assignment on April 15, 1970, without more, did not start the running of the period of limitations. The trial court erred in holding otherwise.

II. The second ground urged by American in its motion for summary judgment is predicated on the theory the issues arising from Stoller's petition in the present action are barred by the res judicata effect of Stoller's failure to plead those facts in Case I since the issues generated by such facts constituted a compulsory counterclaim required to be asserted in that case.

The trial court in its ruling on American's motion for summary judgment relied heavily on this court's decision in Case I, *Am. Title Ins. Co. v. Stoller Fisheries*, 227 N.W.2d 481. The trial court maintains we there held that the issue generated by the facts asserted in Stoller's counterclaim which it offered by way of amendment to its answer in that case constituted a compulsory counterclaim in Case I and Stoller is barred from asserting those facts as an independent action in Case II.

In support of the trial court's ruling American draws the court's attention to rule 29, R.C.P., which provides as follows:

"A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any opposing party and arising out of the transaction or occurrence that is the basis of such opposing party's claim, unless its adjudication would require the presence of indispensable parties of whom jurisdiction cannot be acquired. A final judgment on the merits shall bar such a counterclaim, although not pleaded."

Stoller contends the counterclaims were not compulsory and supports its position by pointing out that neither the trial court nor the supreme court determined in Case I its counterclaims were compulsory. For further support Stoller relies on its argument that its cause of action did not mature until it paid the affirmed judgment. At that point only, Stoller asserts, did its cause of action mature and only then did its counterclaims become compulsory.

As stated, in Case I this court referred to Stoller's counterclaims as compulsory because Stoller asserted this to be the fact

and because American did not dispute this contention. We did not then decide his claims were compulsory. The trial court never ruled in Case I the counterclaim proposed by Stoller's amendment to its answer in that case was compulsory.

This statement in *Harrington v. Polk Co. Fed. S. & L. Ass'n of Des Moines*, 196 N.W.2d 543, 545 (Iowa 1972), is pertinent:

"A claim is a compulsory counterclaim as contemplated by rule 29 where it arises out of the transaction or occurrence that is the basis of the opposing party's claim if: (1) it is then matured, (2) it is not the subject of a pending action, (3) it is held by the pleader against the opposing party, and (4) it does not require the presence of indispensable parties of whom jurisdiction cannot be acquired. * * * [citing authorities]."

The problem presented requires a determination as to when Stoller's action for tortious interference matured. American, in argument, relies on the date of its assignment from Gorton, April 15, 1970, as the date Stoller's claim, if any, matured.

Under rule 29 a claim matures when the holder thereof is entitled to a legal remedy. As pointed out in division I, actual loss or resultant damage to the party whose relationship or expectancy has been disrupted by the intention and wrongful interference of another is an essential element of a cause of action for this tort. Stoller's claim for relief did not mature on April 15, 1970, since events had not at that time developed to a point where Stoller was entitled to commence an action on this tort because of the lack of this essential element.

The trial court relied on its reading of this court's decision in Case I which it insists held Stoller's counterclaim offered by amendment in Case I was in fact compulsory in dealing with the second ground urged by American in its motion for summary judgment in Case II. In its motion in Case II American asserts Stoller's present action constitutes a compulsory counterclaim which was required to be filed in Case I.

We have pointed out the trial court is wrong in its view of our holding in Case I. At no place in the ruling does the trial court specify any date on which Stoller's claim for this tort matured.

In view of the trial court's ruling in Case II we point out American had commenced its action in Case I August 11, 1972, against Stoller in the Dickinson District Court on the Florida judgment. In light of what has been said in division I hereof we are convinced events had not at that time developed to a point where it could be held Stoller's claim for relief had matured. Consequently, Stoller's claim for relief did not constitute a counterclaim on August 11, 1972.

It was not until August 22, 1973, when the trial court granted American summary judgment in Case I that Stoller clearly became obligated to pay American a considerable sum of money or to post a bond on appeal.

As we understand, American insists Stoller is estopped from contending in Case II that the claim asserted in its petition is not a compulsory counterclaim in view of Stoller's inconsistent position both in the trial court and in this court that the claim asserted in Case I constituted a compulsory counterclaim. We are not persuaded by this argument.

The trial court erred in granting American summary judgment on the second ground urged by American in its motion.

III. American contends the trial court was correct in its adjudication of law points and summary judgment ruling that chapter 639, The Code, 1975 (unchanged in the 1977 Code) is unconstitutional. The trial court based its decision on its finding chapter 639 provided for neither notice nor hearing prior to or immediately after attachment, levy and seizure of American's property. The trial court looked to the following cases in making its decision: *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, reh. den., 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165; *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406; *North Georgia Finishing, Inc. v. Di-Chem,*

*Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751; *Thorp Credit, Inc. v. Barr,* 200 N.W.2d 535 (Iowa 1972), cert. den., 410 U.S. 919, 93 S.Ct. 978, 35 L.Ed.2d 581.

■ The first question presented under this contention, impliedly raised by Stoller, is the propriety of deciding constitutional issues by an adjudication of law points or by a motion for summary judgment. This issue has apparently never been confronted squarely by this court. No cases have been found expressing any opinion on the subject as to an adjudication of law points. In *Mabey v. Reagan,* 537 F.2d 1036, 1050 (9 Cir. 1976), the court stated, "Summary disposition is generally inapposite for constitutional questions."

Only one Iowa case was found which considered an appeal from findings as to constitutional questions in both an adjudication of law points and in a motion for summary judgment. In *Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232 (Iowa 1975), cert. den., 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48, this court reviewed findings that upheld as constitutional section 614.24, The Code. Although there was no issue raised in *Presbytery* as to the propriety of deciding constitutional questions in rule 105 and rule 237, R.C.P., proceedings, we considered and affirmed both rulings.

■ A party challenging a statute as unconstitutional must do so at the earliest available opportunity in the progress of the case. It is our view the challenge to chapter 639 made by American in the present case was timely.

We turn now to American's contention that chapter 639 is unconstitutional. The first case cited by American in support of its position is *Fuentes.*

In *Fuentes* the United States Supreme Court struck down Florida and Pennsylvania statutes which provided for prejudgment seizure under a writ of replevin. The Court found neither statute provided for notice or hearing prior to or immediately following the seizure of the person's possessions. *Fuentes, supra,* 407 U.S. at 69–70, 92 S.Ct. at 1988–1989, 32 L.Ed.2d at 564. The Court pointed out that, "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy the right they must first be notified.' * * [citing authorities]. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' * * * [citing authority]." *Fuentes, supra,* 407 U.S. at 80, 92 S.Ct. at 1994, 32 L.Ed.2d at 569.

The Court found no requirement in either statute that the applicant for the writ make a convincing showing to anyone other than a clerk of the court of facts upon which the writ might issue. *Fuentes, supra,* 407 U.S. at 73–74, 92 S.Ct. at 1990–1991, 32 L.Ed.2d at 566. In this connection the Court stated:

"The constitutional right to be heard is a basic aspect of the duty of the government to follow a fair process of decision-making when it acts to deprive a person of his possessions. * * * Its purpose * * * is to protect his use and possession of property from arbitrary encroachment—to minimize substantially unfair or mistaken deprivations of property, * * *." *Fuentes, supra,* 407 U.S. at 80–81, 92 S.Ct. at 1994, 32 L.Ed.2d at 570.

The Court discussed the timing of the notice and hearing as follows:

"If the right to notice and hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right to procedural due process has already occurred. 'This Court has not . . embraced the general proposition that a wrong may be done if it can be undone.' * * * [citing authority]." *Fuentes, supra,* 407 U.S. at 81–82, 92 S.Ct. at 1994–1995, 32 L.Ed.2d at 570.

The Court discussed the bond requirement under both statutes as it served as a deterrent to the bringing of unjustified replevin actions. The Court concluded, "the minimal deterrent effect of a bond requirement is, in a practical sense, no substitute for an informed evaluation by a neutral official." *Fuentes, supra*, 407 U.S. at 83, 92 S.Ct. at 1995–1996, 32 L.Ed.2d at 572.

Thus the Court in *Fuentes* struck down as unconstitutional a statute which allowed prejudgment seizure of another's possessions (1) through ex parte application, (2) wherein only conclusory allegations needed to be made, (3) before only a clerk of the court, (4) without prior notice or hearing.

*Fuentes* was the law until the Court appeared to retreat from its holding in the next case cited by American, *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406.

In *Mitchell* the Court upheld a Louisiana sequestration statute. The Court found " * * * this statutory procedure effects a constitutional accommodation of the conflicting interests of the parties." *Mitchell, supra*, 416 U.S. at 607, 94 S.Ct. at 1900, 40 L.Ed.2d at 413. The Court found saving characteristics present in the statute. They saved the statute from the fate of the Florida and Pennsylvania statutes dealt with in *Fuentes*. The statute was saved even though it provided for no prior notice or hearing.

Under the Louisiana statute the creditor had to allege facts, not conclusory allegations, in a verified petition or affidavit. The creditor had to make a clear showing of these facts before a judge. Only the judge could issue the writ and, then, only after sufficient bond was posted. The debtor was immediately entitled to seek dissolution of the writ. The burden of proof on the validity of the writ was on the creditor. *Mitchell, supra*, 416 U.S. at 605–606, 94 S.Ct. at 1899, 40 L.Ed.2d at 412.

In the third case relied upon by American, *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751, the Court struck down a Georgia garnishment statute. The statute provided for no notice or hearing prior to or immediately after the seizure of the debtor's possessions. Its only protection to the debtor was a double-amount bond requirement. It allowed a clerk to issue the garnishment process on only conclusory allegations. *North Georgia, supra*, 419 U.S. at 601–603, 95 S.Ct. at 720–721, 42 L.Ed.2d at 754–755. The statute had none of the saving characteristics of the Louisiana statute in *Mitchell*.

In the fourth case relied upon by American, *Thorp Credit, Inc. v. Barr*, 200 N.W.2d 535 (Iowa 1972), we struck down two sections of the Iowa replevin statute. We found we were " * * * bound under the holding in *Fuentes* to declare unconstitutional and invalid sections 643.5 and 643.6, The Code, [1971] for their want of notice and judicial hearing requirements prior to seizure." *Thorp, supra*, 200 N.W.2d at 536–537.

In review, three of the cases cited by American have held replevin and garnishment statutes unconstitutional because the statutes contained no provision for notice or hearing prior to or immediately after the seizure. In none of these cases, however, was an attachment statute declared unconstitutional. In fact, attachment statutes were given special deference by the Court in *Fuentes* and *Mitchell*.

In *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 1999, 32 L.Ed.2d at 576, n. 23, the Court stated the following:

"Of course, outright seizure of property is not the only kind of deprivation that must be preceded by a prior hearing. See, e. g., *Sniadach v. Family Finance Corp., supra* [395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349]. In three cases, the Court has allowed the attachment of property without a prior hearing. In one, the attachment was necessary to protect the public against the same sort of immediate harm involved in the seizure cases—a bank failure. *Coffin Bros. & Co. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768. Another case involved attachment necessary to secure jurisdiction in state court—clearly a most basic and impor-

tant public interest. *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837. It is much less clear what interests were involved in the third case, decided with an unexplicated *per curiam* opinion simply citing *Coffin Bros.* and *Ownbey.* *McKay v. McInnes,* 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975. As far as essential procedural due process doctrine goes, *McKay* cannot stand for any more than was established in the *Coffin Bros.* and *Ownbey* cases on which it relied completely. \* \* \* [citing authority]." (Emphasis in original).

In *Mitchell,* 416 U.S. at 613–614, 94 S.Ct. at 1903, 40 L.Ed.2d at 417, the Court appeared to provide even more support for attachment statutes. The Court raised the *Fuentes* footnote to the text and amplified upon the *McKay* case as follows:

"\* \* \* Furthermore, based on *Ownbey* and *Coffin,* the Court later sustained the constitutionality of the Maine attachment statute. *McKay v. McInnes,* 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1928). In that case, a nonresident of Maine sued in the Maine courts to collect a debt from a resident of the State. As permitted by statute, and as an integral part of instituting the suit, the creditor attached the properties of the defendant, without notice and without judicial process of any kind. In sustaining the procedure, the Maine Supreme Court, 127 Me. 110, 141 A. 699 (1928), described the attachment as designed to create a lien for the creditor at the outset of the litigation. 'Its purpose is simply to secure to the creditor the property which the debtor has at the time it was made so that it may be seized and levied upon in satisfaction of the debt after judgment and execution may be obtained.' \* \* \* The judgment of the Maine court was affirmed without opinion, citing *Ownbey* and *Coffin.*" (Emphasis in original).

By way of caution, however, the Court in *Mitchell* further stated: "In *Sniadach v. Family Finance Corp., supra,* it was said that *McKay* and like cases dealt with '[a] procedural rule that may satisfy due process for attachments in general' but one that would not 'necessarily satisfy procedural

due process in every case,' nor one that 'gives necessary protection to all property in its modern forms.' 395 U.S., at 340, 89 S.Ct., at 1822." *Mitchell, supra,* 416 U.S. at 614, 94 S.Ct. at 1903, 40 L.Ed.2d at 417.

American draws our attention to a case which because of a recent ruling no longer stands for the proposition urged and which was not, in any event, dispositive of the case at hand, *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587.

For our purposes *Carey* stands for the proposition an attachment statute will be found unconstitutional if it does not provide the debtor with the opportunity to try the merits of his defenses to the attachment. Even though the case has been remanded to the district court so that it could vacate its order, the Supreme Court made its position clear. The debtor must have an opportunity to present the merits of his defenses to the attachment.

Thus it appears for the most part the constitutional status of attachment statutes is in limbo at the federal level. The cases at the federal level and our own *Thorp* case provide some guide, however, in our determination of the constitutionality of chapter 639.

■ This chapter has many of the saving characteristics mentioned in all the federal cases. Under it the writ can only issue if a suit is or has been instituted. There must be a bond posted prior to issuance of the writ. There must be notice to the defendant after the seizure. While these characteristics alone would not reach the level of procedural due process protection envisioned in the federal cases, other sections provide the necessary protection.

An important saving characteristic is set forth in section 639.61. This section provides for investigation to ferret out unfounded or unjustified attachments in this manner:

"The petitioner's claim shall be in a summary manner investigated. The court may hear the proof or order a reference, or may impanel a jury to inquire into the facts. If it is found that the petitioner has a title to,

a lien on, or any interest in such property, the court shall make such order as may be necessary to protect his rights."

Another important saving characteristic is found in section 639.63. This section provides for an immediate post-seizure hearing as follows:

"A motion may be made to discharge the attachment or any part thereof, at any time before trial, for insufficiency of statement of cause thereof, or for other cause making it apparent of record that the attachment should not have issued, or should not have been levied on all or on some part of the property held."

Thus, this provision is in accord with the concern in *Carey* that the defendant be able to raise the merits of any defenses he has to the attachment. See also sections 639.65 and 639.66, The Code.

Apparently, these sections were not considered by the trial court in the case before us. It found no provision for hearing immediately after seizure.

Another saving characteristic of the statute in question is contained in section 639.64 which provides in pertinent part as follows:

"If the judgment is rendered in the action for the defendant, or, if the action is dismissed by the court, by the plaintiff, or, by agreement of the parties, or, if judgment has been entered for the plaintiff and has been satisfied of record, the attachment shall, subject to the right of appeal, automatically be discharged and the property attached, or its proceeds, shall be returned to the defendant. * * *."

Thus, the attachment can only continue if the case is appealed. This prevents a supposed creditor from bringing an unjustified suit merely to freeze the property of a defendant. If the suit of which the attachment is an integral part is ended, the attachment automatically ends.

It must be recognized, however, chapter 639 does have some of the features of the statutes struck in *Fuentes* and *North Georgia*. The writ need not be issued by a judge; a clerk may issue it. There is no provision for notice before seizure. Thus, the statute contains both saving and non-saving characteristics.

■ When determining the constitutionality of a statute the court is guided by a sound principle of law. There is a strong presumption of constitutionality which attends statutes · regularly enacted by our General Assembly. *Presbytery of Southeast Iowa v. Harris*, 226 N.W.2d at 237. Here, unlike the situation in the *Thorp* case, we are not foreclosed from finding the attachment statute constitutional.

■ This statute is rationally related to a vital state interest. A state must protect the rights of creditors from debtors who, without the statute, could easily thwart the lawful attempts of their creditors to enforce the obligations of their debtors. A state must, at the same time, protect the rights of debtors from unjustified seizure of their property.

While we admit our statute does not perfectly protect the rights of both creditors and debtors, we find it does effect " * * * a constitutional accommodation of the conflicting interests of the parties." *Mitchell, supra*, 416 U.S. at 607, 94 S.Ct. at 1900, 40 L.Ed.2d at 413.

In light of all that has been set out above and after careful consideration of the arguments of the parties we conclude American has not sustained its burden to prove the statute unconstitutional.

■ IV. Stoller contends the trial court should not have decided the constitutionality of chapter 639 because such a determination was unnecessary. Stoller argues once American entered a general appearance in Case II, the trial court acquired in personam jurisdiction over American. Stoller contends this acquisition of in personam jurisdiction foreclosed American from raising the constitutionality of chapter 639.

American insists Stoller is mixing apples and oranges. American maintains its challenge to chapter 639 is not a challenge to the trial court's jurisdiction. It is instead a challenge to the constitutionality of chapter

639 because it allegedly violates American's due process right to notice and hearing.

We find Stoller's contention in this respect is without merit.

We are aware of the decision in *Shaffer v. Heitner*, —— U.S. ——, 97 S.Ct. 2569, 53 L.Ed.2d 683, decided June 24, 1977, but conclude it has no application in light of the factual circumstances here.

The trial court's determinations in its adjudication of law points and in its grant of American's motion for summary judgment on the ground that chapter 639, The Code, 1975, is unconstitutional are erroneous.

With directions to the trial court to set aside its dismissal of Stoller's petition with costs and its order vacating the attachment the case is—Reversed and remanded.